[No. G033023. Fourth Dist., Div. Three. Mar. 28, 2005.]

THOMAS H. CASEY, as Trustee in Bankruptcy, etc., Plaintiff and Appellant, v.
U.S. BANK NATIONAL ASSOCIATION et al., Defendants and Respondents.

1140

## COUNSEL

Rus, Miliband & Smith, Ronald Rus, Joel S. Miliband and M. Peter Crinella for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Andrew J. Guilford and Paul F. Rafferty for Defendant and Respondent Wells Fargo Bank, N.A.

Manatt, Phelps & Phillips, Donald R. Brown, Henry C. Wang and Ileana M. Hernandez for Defendant and Respondent U.S. Bank National Association.

Quinn Emanuel Urquhart Oliver & Hedges, Kenneth R. Chiate and Mary S. Thomas for Defendant and Respondent City National Bank.

OPINION

**IKOLA, J.**—A bankruptcy trustee sued several banks for aiding and abetting a fraudulent scheme to loot the debtor corporation, perpetrated by a number of its officers. The banks successfully demurred to the second amended complaint on the ground the trustee lacks standing to assert these claims under the so-called *Wagoner* rule because the officers' fraudulent conduct is imputed to the debtor (and thus the trustee). Based on this imputation of wrongdoing, the trial court also ruled the trustee's claims were barred by the affirmative defense of in pari delicto.

We conclude the allegations in the complaint do not support imputing the officers' fraud to the debtor, and the court's rulings based on that imputation are therefore groundless. That conclusion, however, does not end our inquiry.

The banks demurred on the additional ground the complaint fails to state any cause of action. We concur with this assertion, based on our holding that a bank cannot be found liable for aiding and abetting a depositor's breach of fiduciary duty absent actual knowledge of the underlying wrong the depositor is perpetrating. The trustee fails to allege the banks had such knowledge.

Because the demurrer did not specifically challenge the adequacy of the allegations concerning the banks' knowledge of the underlying wrong, the trustee should be allowed to attempt to cure this defect by amendment. We thus reverse the judgment and remand the case to the trial court for the purpose of giving the trustee an opportunity to allege, if he can, sufficient facts establishing the banks had the requisite knowledge to support an aiding and abetting claim.

## FACTUAL AND PROCEDURAL BACKGROUND

Because we are reviewing the propriety of an order sustaining a demurrer, we assume the factual allegations of the second amended complaint are true. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513].)

Thomas H. Casey, chapter 7 Trustee (the Trustee) of the bankruptcy estate of DFJ Italia, Ltd. (DFJ), sued three banks, City National Bank, U.S. Bank National Association, and Wells Fargo Bank, N.A. (collectively, the banks) for their part in a massive, systemic theft from DFJ. Essentially, the Trustee

alleges the banks aided and abetted certain officers and directors of DFJ (the DFJ Fiduciaries) in their scheme to unlawfully divert more than $36 million in investor funds from the corporation.

The second amended complaint does not identify the nature of the corporation's business. From the original complaint we know that between April 1995 and March 20, 2000, "DFJ held itself out to investors as a 'trading house' and/or 'investment house' supported by a royal Sicilian family trust worth billions of dollars which would invest money on behalf of clients in foreign currency transactions, precious metal transactions, or projects in the Italian film industry. DFJ raised approximately $47.6 million, ostensibly for the purpose of making such investments. [¶] . . . [U]p through the date of the filing of the involuntary petition in bankruptcy against DFJ on March 20, 2000, DFJ operated, in part, through a series of alias names and affiliated companies . . . ." We refer to these affiliated companies collectively as the Fraudulent Entities.

The Fraudulent Entities were the alter egos of the DFJ Fiduciaries, who used these "sham entities" to loot the corporation. Specifically, the DFJ Fiduciaries set up numerous bank accounts in the names of the Fraudulent Entities and used these accounts to launder the money stolen from DFJ.

The Trustee alleges the banks aided and abetted the DFJ Fiduciaries in this money laundering scheme by "allowing them to open accounts with invalid tax identification numbers, which accounts were then used to drain funds from the Estate to the accounts of individual directors, officers, their families and affiliated companies; allowing large sums of cash, often in excess of $250,000 at a time and aggregating some $6 million, to be removed from [the banks'] cash vaults (in unmarked duffel bags); violating banking regulations and the [banks'] own internal policies and procedures; allowing obviously forged negotiable instruments to be paid; and, ignoring monetary restrictions ('not to exceed' limits) appearing on the face of individual checks by paying sums in excess of such limits." The Trustee alleges the banks "willfully ignored clearly fraudulent and criminal activity in order to profit from fees, interest, and other benefits generated by the money laundering scheme."

The second amended complaint attempts to state two causes of action against the banks: aiding and abetting breach of fiduciary duty, and unfair business practices. The pleading seeks damages in excess of $36 million.

The banks demurred to the second amended complaint. (They had already successfully demurred to the Trustee's first two pleadings.) The court sustained the demurrer on two grounds. First, the court concluded the Trustee lacks standing under the *Wagoner* rule, which holds that "[a] claim against a

third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." (*Shearson Lehman Hutton, Inc. v. Wagoner* (2d Cir. 1991) 944 F.2d 114, 120.) Second, the court concluded the affirmative defense of in pari delicto applies to bar the Trustee's claims.[1] The court denied the Trustee leave to amend and dismissed the complaint.

## DISCUSSION

Underlying both of the grounds upon which the court sustained the demurrer is the legal conclusion that the wrongdoing of the DFJ Fiduciaries should be imputed to the corporation (and, by extension, to the Trustee). (*In re Wedtech Securities Litigation* (Bankr. S.D.N.Y. 1992) 138 B.R. 5, 8 [denial of standing under *Wagoner* rule depends on "whether the guilt of the corporate officers can be imputed to the corporation"]; *Official Committee of Unsecured Creditors v. R.F. Lafferty Co.* (3d Cir. 2001) 267 F.3d 340, 355 (*Lafferty*) ["If wrongdoing is imputed, then the in pari delicto doctrine comes into play and bars a suit"].) The court based this conclusion on two specific findings: First, "the Trustee has alleged that all of the relevant decision makers of the corporate debtor were involved in the fraud." Second, that there was a "complete unity between the debtor and its management in orchestrating the fraudulent scheme. . . ." But neither of these findings is supported by the allegations in the complaint.

In the second amended complaint, the Trustee identifies the DFJ Fiduciaries as consisting of four officers of DFJ (its president and chief executive officer, its chief financial officer, and two others with the generic title "officer of DFJ") and various "*former*" DFJ officers (who presumably retained no decisionmaking authority within the corporation). The complaint does not disclose who owns DFJ, the composition of its board of directors, or how many additional officers the corporation has. Without such information, it is impossible to determine *from the complaint* that "all of the relevant decision makers" of DFJ were actually involved in the fraud. Likewise, the complaint provides no basis for finding a "complete unity between [DFJ] and its management in orchestrating" the fraudulent scheme.

We further note that the second amended complaint contains no allegation the DFJ Fiduciaries acted as the alter egos of DFJ, or otherwise so "dominated and controlled" DFJ that their wrongdoing should be imputed to the

---

[1] "The doctrine of in pari delicto dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed *in pari delicto*, and the law will aid neither, but rather, will leave them where it finds them." (*Smith ex rel. Boston v. Arthur Andersen L.L.P.* (D.Ariz. 2001) 175 F.Supp.2d 1180, 1198.)

corporation. (*O'Halloran v. First Union Nat. Bank of Florida* (11th Cir. 2003) 350 F.3d 1197, 1204 [absent alter ego allegation, wrongs of individual acting adversely to corporation are not imputed to corporation]; *In re Bennett Funding Group, Inc.* (2nd Cir. 2003) 336 F.3d 94, 100 [alter ego allegation necessary for imputing agent's wrongdoing to corporation]; *Lafferty, supra,* 267 F.3d at p. 360 [*Wagoner* rule and in pari delicto defense apply only if fraudulent actors "controlled and dominated" corporation].) While in a different procedural context (e.g., summary judgment), the banks may be able to establish a factual basis for imputing the DFJ Fiduciaries' wrongdoing to DFJ, the complaint itself does not support that result. Consequently, we conclude the court erred in sustaining the demurrer on the grounds of in pari delicto and the *Wagoner* rule.

■ The court's erroneous choice of grounds for its order, however, does not doom the judgment. "A judgment based on an order sustaining a general demurrer must be affirmed if any one of the several grounds of demurrer is well taken." (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 21 [157 Cal.Rptr. 706, 598 P.2d 866].) The banks presented the additional ground that the complaint fails to state any cause of action. On this argument the banks prevail, as we explain in the discussion that follows.

*The Cause of Action for Aiding and Abetting Breach of Fiduciary Duty*

■ The Trustee's first cause of action against the banks is for aiding and abetting breach of fiduciary duty. California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort. " 'Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.' (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 846 [33 Cal.Rptr.2d 438]; Rest.2d Torts, § 876.)" (*Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1325–1326 [58 Cal.Rptr.2d 308].)

The second amended complaint attempts to assert the banks' liability under the first prong of the common law test. In essence, the Trustee alleges the banks knew the DFJ Fiduciaries were breaching their fiduciary duty to DFJ and substantially assisted that breach of duty by allowing the DFJ Fiduciaries' skullduggery in connection with the bank accounts (e.g., opening accounts for sham business entities, transferring money from those accounts to themselves through forged checks and checks that exceeded monetary restrictions, and carrying away huge, unreported sums of cash in unmarked duffel bags).

The banks challenged the sufficiency of the pleading by contending the allegations fail to establish the "substantial assistance" element of an aiding and abetting claim. In support, the banks rely on a number of federal court cases holding as a matter of law that a bank's conduct in executing ordinary business transactions for a customer, even if the bank knows the customer is engaged in wrongdoing, does not constitute the substantial assistance required to prove aiding and abetting. (See, e.g., *Glidden Co. v. Jandernoa* (W.D.Mich. 1998) 5 F.Supp.2d 541, 557; *Bane v. Sigmundr Exploration Corp.* (5th Cir. 1988) 848 F.2d 579, 581–582; *Chase Manhattan Bank, N.A. v. Fidata Corp.* (S.D.N.Y. 1988) 700 F.Supp. 1252, 1263.) But the banks fail to acknowledge contrary federal authority on the question. (See, e.g., *Lawyers Title Insurance v. United American Bank* (W.D.Tenn. 1998) 21 F.Supp.2d 785, 798–800 [a reasonable jury could find bank's policies and practices of extending instant credit and allowing overdrafts with respect to escrow account constitute substantial assistance element of aiding and abetting claim]; *Neilson v. Union Bank of California, N.A.* (C.D.Cal. 2003) 290 F.Supp.2d 1101, 1109, 1129 (*Neilson*) [allegation that banks gave fraudulent investment adviser access to money, a mechanism for managing investors' custodial accounts, and "aura of legitimacy" sufficiently pleads substantial assistance].)

■ We have found no California cases directly on point. Nevertheless, common sense tells us that even "ordinary business transactions" a bank performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort. Knowledge is the crucial element. We thus reject the banks' challenge to the sufficiency of the substantial assistance allegations, and focus instead on whether the Trustee adequately alleged the knowledge element of the aiding and abetting claim.[2]

■ California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted. In *Lomita Land & Water Co. v.*

---

[2] The banks assert an additional argument, likewise unmeritorious, effectively contending the Trustee is legally incapable of stating a cause of action against the banks for aiding and abetting breach of fiduciary duty. The banks assert that because they did not owe an independent fiduciary duty to DFJ, a nondepositor, they cannot be held liable for aiding and abetting the DFJ Fiduciaries' breach of fiduciary duty. The banks argue this result flows from case law holding that a person cannot be liable for conspiracy to commit a tort unless that person is capable of committing the underlying tort. (*Applied Equipment Corp. v. Litton Saudi Arabia LTD.* (1994) 7 Cal.4th 503, 514 [28 Cal.Rptr.2d 475, 869 P.2d 454].) In *Neilson, supra,* 290 F.Supp.2d at pages 1133–1136, the court rejected this very argument, explaining that under California law liability for aiding and abetting a tort differs fundamentally from liability based on conspiracy to commit a tort. For the reasons articulated so well in the *Neilson* opinion, we reject the banks' attempt to overlay the civil conspiracy "independent duty" requirement onto an aiding and abetting claim.

*Robinson* (1908) 154 Cal. 36 [97 P. 10] (*Lomita*), the California Supreme Court explained this requirement in the course of affirming a judgment against two defendants for aiding and abetting a fraudulent land sale scheme engineered by two others. The court stated, "The words 'aid and abet' as thus used have a well understood meaning, and may fairly be construed to imply an intentional participation *with knowledge of the object to be attained.*" (*Id.* at p. 47, italics added.) Finding the defendants had "actual knowledge of all the facts relative to" the scheme and "knowingly" assisted in its "consummation," the court concluded they were rightly held liable for aiding and abetting the fraud. (*Id.* at p. 48.)

In *Howard v. Superior Court* (1992) 2 Cal.App.4th 745 [3 Cal.Rptr.2d 575], the court stated that " '[a]iding-abetting focuses on whether a defendant knowingly gave "substantial assistance" to someone who performed wrongful conduct . . . .' [Citation.] [¶] . . . [A]iding and abetting . . . necessarily requires a defendant to reach *a conscious decision to participate in tortious activity* for the purpose of assisting another in performing a wrongful act." (*Id.* at pp. 748–749, italics added.)

Likewise, *Gerard v. Ross* (1988) 204 Cal.App.3d 968 [251 Cal.Rptr. 604], articulated the knowledge required for aiding and abetting as follows: "In the civil arena, an aider and abettor is called a cotortfeasor. To be held liable as a cotortfeasor, a defendant must have knowledge and intent. . . . A defendant can be held liable as a cotortfeasor on the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed, and acted *with the intent of facilitating the commission of that tort.*" (*Id.* at p. 983, italics added.) Of course, a defendant can only aid and abet another's tort if the defendant knows what "that tort" is. As the Supreme Court put it in *Lomita*, the defendant must have acted to aid the primary tortfeasor "with knowledge of the object to be attained." (*Lomita, supra*, 154 Cal. at p. 47.)

In federal case law we find two decisions, presenting facts analogous to those before us, which are particularly helpful in illustrating the application of this rule at the pleading stage. We consider first *In re Sharp Intern. Corp.* (Bankr. E.D.N.Y. 2002) 281 B.R. 506 (*Sharp*). In *Sharp*, a debtor corporation sued its lender in bankruptcy court on various theories, including aiding and abetting a breach of fiduciary duty by the corporation's principals. Using falsified sales figures, the principals had fraudulently raised a huge amount of capital from investors and lenders, and the principals also wrongfully diverted $44 million of the corporation's money to companies they personally owned or controlled. The lender filed a motion to dismiss the complaint for failure to state a claim (Fed. Rules Civ. Proc., rule 12(b)(6), 28 U.S.C.) and the court granted the motion as to all causes of action. Importantly, for our purposes, the court found the allegations of aiding and abetting breach of fiduciary duty

inadequate because the trustee failed to allege the lender had actual knowledge of the specific wrongful act that constituted the breach of fiduciary duty it purportedly aided and abetted.

The court's analytic approach is instructive: "To analyze the sufficiency of Sharp's [the debtor's] pleading, it is necessary to identify precisely the breach of fiduciary duty for which Sharp seeks to hold State Street [the lender] liable. For the purpose of this analysis, the [principals'] wrongful conduct must be separated into two conceptually distinct categories: (1) causing Sharp to raise millions of dollars from [investors] through fraudulent misrepresentations, and (2) unlawfully diverting more than $44 million in Sharp funds to companies that provided no consideration to Sharp. . . ." (*Sharp, supra*, 281 B.R. at pp. 513–514.) "Because the wrong for which Sharp seeks recovery against State Street is the [principals'] looting of Sharp, the relevant inquiry is whether Sharp adequately alleges that State Street had knowledge that the [principals] were diverting monies from Sharp." (*Id.* at p. 515.)

Sharp alleged its lender's "suspicions of fraud . . . became actual knowledge" when an officer monitoring Sharp's accounts reviewed certain reports that revealed Sharp's principals "were fraudulently inflating Sharp's receivables." (*Sharp, supra*, 281 B.R. at pp. 514–515.) The court rejected the contention this allegation established actual knowledge of the *diversion*: "The fact that a company is inflating its receivables does not necessarily mean that the company's principals are looting it. Although it is possible that State Street suspected that the [principals] were engaged in this activity in order to cover up the fact that they were siphoning monies from Sharp, suspicion and surmise do not constitute actual knowledge." (*Id.* at p. 515, fn. omitted.) The court concluded the pleading fell short of alleging the lender's actual knowledge of the diversion, and dismissed the complaint on this and other grounds.

In contrast to the result in *Sharp*, the court in *Neilson, supra*, 290 F.Supp.2d 1101 denied a motion to dismiss aiding and abetting claims because the plaintiffs clearly alleged the defendants' actual knowledge of the underlying wrong they substantially assisted. The *Neilson* case was a class action in which hundreds of investors sued four banks for allegedly assisting a crooked investment adviser, Reed Slatkin, in running "a classic Ponzi scheme." (*Id.* at p. 1108.) Slatkin "used monies paid by later investors to pay artificially high returns to initial investors, with the ultimate goal of attracting still more investors." (*Ibid.*) When the scheme collapsed, as all Ponzi schemes eventually do, investors collectively lost a staggering sum: about $250 million. (*Id.* at p. 1109.)

Among other claims leveled against the four banks, the plaintiffs sued for aiding and abetting breach of fiduciary duty and aiding and abetting fraud. The plaintiffs alleged the banks substantially assisted Slatkin's scheme by providing him with a steady flow of new funds, a "mechanism for managing investors' custodial accounts," and "an aura of legitimacy that allowed the scheme to flourish." (*Neilson, supra*, 290 F.Supp.2d at p. 1109.)

The banks moved to dismiss the aiding and abetting causes of action, arguing, among other things, that the plaintiffs failed to plead sufficiently the "knowledge" element of the claims. (*Neilson, supra*, 290 F.Supp.2d at p. 1118.) The court began its analysis by affirming that under California law an aider and abettor must have "actual knowledge of the primary violation." (*Id.* at p. 1119, citing, inter alia, *Howard v. Superior Court, supra*, 2 Cal.App.4th at p. 749, and *Gerard v. Ross, supra*, 204 Cal.App.3d at p. 983.) The court noted that it is sufficient for a pleading to "allege generally that defendants had actual knowledge of *a specific primary violation*." (*Neilson, supra*, 290 F.Supp.2d at p. 1120, italics added.)

Applying this standard, the court concluded the plaintiffs' aiding and abetting claims sufficiently alleged the requisite knowledge on the part of the banks: The allegations established the banks knew Slatkin was running a Ponzi scheme and was thereby defrauding investors and violating his fiduciary duties to these investors (some of whom had individual "custodial" or "trustee" accounts at the banks). (*Neilson, supra*, 290 F.Supp.2d at p. 1120.) Furthermore, the allegations established the banks intentionally assisted Slatkin's crime through their banking operations, "utiliz[ing] atypical banking procedures . . . to accommodate" the Ponzi scheme. (*Id.* at p. 1120.) In sum, the plaintiffs alleged "each bank actively participated in Slatkin's Ponzi scheme with knowledge of his crimes." (*Ibid.*) The court concluded these allegations established the banks' actual knowledge of the primary violation, and thus satisfied the knowledge element of the aiding and abetting claims.

Turning to the present case, we find the Trustee's allegations fall far short of the mark set in *Neilson* and *Sharp*. As we explain more fully below, though the complaint provides ample details of the banks' improper *conduct* in their business dealings with the unscrupulous DFJ Fiduciaries, the complaint fails to establish that the banks had actual knowledge of the primary violation in which they purportedly participated. Absent such knowledge, the banks cannot be held liable on an aiding and abetting theory. (*Lomita, supra*, 154 Cal. at p. 47; *Howard v. Superior Court, supra*, 2 Cal.App.4th at p. 749; *Gerard v. Ross, supra*, 204 Cal.App.3d at p. 983; *Neilson, supra*, 290 F.Supp.2d at p. 1119.)

*Sharp* counsels that in order to analyze the sufficiency of a claim for aiding and abetting breach of fiduciary duty, we must first "identify precisely the breach of fiduciary duty for which [the Trustee] seeks to hold [the banks] liable." (*Sharp, supra,* 281 B.R. at p. 513.) Here, the asserted breach of fiduciary duty was the DFJ Fiduciaries' misappropriation of $36 million from DFJ. As the court explained in *Sharp,* "the relevant inquiry," then, is whether the Trustee adequately alleges the banks had knowledge the DFJ Fiduciaries were misappropriating funds from DFJ. (*Id.* at p. 515.) An examination of the complaint quickly reveals no such knowledge is alleged.

The Trustee essentially alleges the banks knew *something* fishy was going on with the accounts opened by the DFJ Fiduciaries. The banks allowed the DFJ Fiduciaries to open these accounts in the names of the Fraudulent Entities despite knowing these entities were not "legitimate" businesses. The banks knew that the DFJ Fiduciaries were withdrawing money from these accounts with the use of forged checks and checks that exceeded written limits, and, perhaps most suspiciously, that the DFJ Fiduciaries were carrying large, unreported amounts of cash out of the bank in "unmarked duffel bags." The banks knew the DFJ Fiduciaries were "involved in a criminal or dishonest and wrongful enterprise and were, at the very least, laundering money."

We pause to note that under California law, a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder. For example, in *Chicago Title Ins. Co. v. Superior Court* (1985) 174 Cal.App.3d 1142 [220 Cal.Rptr. 507], the court rejected a nondepositor's claim a bank had a duty to inform the nondepositor of the bank's suspicions a bank customer was involved in a check-kiting scheme: "If . . . banks had a duty to reveal suspicions about their customers, they would violate their customers' right to privacy, not to mention be forced to act as the guarantor of checks written by the depositors. We refuse to recognize such a duty by banks to inform on suspicious customers, and we thereby avoid the loss of privacy, expense and commercial havoc that would result from such a holding." (*Id.* at p. 1159; accord, *Software Design & Application LTD. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 483 [56 Cal.Rptr.2d 756] [financial consultant deposited client's funds in bank account and embezzled the funds; client sued bank for failing to investigate and monitor the account; court held bank owed no duty to investor—a nondepositor: "Scrutiny into the financial and business affairs of prospective customers for the express purpose of ferreting out the faithless fiduciary and divining illegal conduits for embezzled funds would be intrusive for the

citizenry and add to the cost of financial transactions, both in terms of time and money"]; *Karen Kane, Inc. v. Bank of America* (1998) 67 Cal.App.4th 1192, 1199 [79 Cal.Rptr.2d 712] [bank had no duty to inform nondepositor maker of checks of bank's suspicions payee was defrauding maker].)

The case of *Chazen v. Centennial Bank* (1998) 61 Cal.App.4th 532 [71 Cal.Rptr.2d 462] (*Chazen*) identifies the policies underlying this limitation on a bank's duties to nondepositors, and illustrates its application in the context of fiduciary accounts. In *Chazen, supra,* 61 Cal.App.4th 532, a mortgage loan broker sold second mortgages to two investors, and agreed to service the loans by collecting payments due and remitting them to the investors. The broker opened three separate accounts at the defendant bank, each of which was designated as an "escrow" or "trust" account on its respective signature card. The broker proceeded to deposit note payments into these accounts and withdraw the bulk of the money for his own use. The investors collectively lost more than $1.2 million through this scam, and sued the bank to recover their damages.

Stating claims against the bank for conversion and negligence, the investors proceeded on the theory the bank had a duty to monitor the trust accounts for breaches of fiduciary duty. They alleged the bank " 'had actual or constructive notice of the . . . conversion of [their] funds based upon irregular activities in' " the trust accounts, including overdrafts, numerous telephone transfers of large sums from the trust accounts into the broker's personal accounts, and commingling of trust assets with nontrust assets. (*Chazen, supra,* 61 Cal.App.4th at p. 540.)

The court in *Chazen* upheld the trial court's ruling sustaining a demurrer without leave to amend, concluding a bank has no duty to "police" accounts, even fiduciary or trust accounts. (*Chazen, supra,* 61 Cal.App.4th at p. 537.) The court explained that the *contractual* nature of the bank-depositor relationship limits a bank's duties in regards to accounts. The court stated that "this contractual relationship does not involve any implied duty 'to supervise account activity' [citation] or 'to inquire into the purpose for which the funds are being used' [citation] and entails no contractual obligation to persons other than the account holder [citation]. It follows that '[c]ommercial banks have no duty to police their fiduciary accounts' [citations] and are 'not liable for the misappropriation of trust funds by the trustee' [citation]." (*Ibid.*)

The court identified two additional policies underlying the rule a bank has no duty to "police" account activity. One is the customer's right to privacy. " ' "A bank customer's reasonable expectation is that, absent compulsion by

legal process, the matters he reveals to the bank will be utilized by the bank only for internal banking purposes. . . ." ' " (*Chazen, supra,* 61 Cal.App.4th at p. 538.)

The other policy cited by the court was that of facilitating the efficient processing of banking transactions. The court noted the present banking system operates under rules requiring "banking transactions to be processed quickly and automatically and impos[ing] strict deadlines for the payment or timely dishonor of checks. [Citations.] . . . Under this system . . . a bank cannot be expected to track transactions in fiduciary accounts or to intervene in suspicious activities." (*Chazen, supra,* 61 Cal.App.4th at p. 539.)

In light of these policies, the court concluded a bank has no duty to prevent wrongdoing (such as commingling, improper disbursements, or misappropriation) in connection with fiduciary accounts. "Instead, the bank is obliged under Financial Code section 953 to honor withdrawals from fiduciary accounts by authorized persons . . . and it is required by Financial Code section 952 to disregard notice of adverse claims to the account, *including notice conveyed by circumstantial evidence* or documents in the bank's possession, unless the claims are made through an appropriate affidavit or court order. *Though the bank may be free to terminate the account, it incurs no liability by failing to do so.*" (*Chazen, supra,* 61 Cal.App.4th at p. 541, italics added.)[3]

This brief primer on California banking law makes clear that in the present case, the banks' alleged knowledge of the DFJ Fiduciaries' suspicious account activities—even money laundering—*without more*, does not give rise to tort liability for the banks. On the other hand, it is equally clear that if the Trustee can allege the banks knew the DFJ Fiduciaries were stealing corporate funds and knowingly assisted the DFJ Fiduciaries in laundering this stolen money, those allegations would suffice to state a claim for aiding and abetting the theft (or breach of fiduciary duty). This case thus involves the intersection of two distinct legal principles—one that strictly limits a bank's

---

[3] California courts have recognized one situation in which a bank has a duty to nondepositors to investigate a suspicious banking transaction. In *Sun 'n Sand, Inc. v. United California Bank* (1978) 21 Cal.3d 671 [148 Cal.Rptr. 329, 582 P.2d 920], the California Supreme Court held a bank has a "minimal" and "narrowly circumscribed" duty of inquiry "when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit." (*Id.* at p. 695.) "*Sun 'n Sand* and its progeny [*Joffe v. United California Bank* (1983) 141 Cal.App.3d 541, 556 [190 Cal.Rptr. 443]; *E.F. Hutton & Co. v. City National Bank* (1983) 149 Cal.App.3d 60, 68 [196 Cal.Rptr. 614] have held banks to be subject to a duty of care toward nondepositors only in narrow factual circumstances: Each case involved the bank's liability for allowing a person to deposit a check, payable to someone else, into a personal account, under circumstances that should have alerted the bank to the possibility of fraud." (*Chazen, supra,* 61 Cal.App.4th at p. 545.)

duties to nondepositors and another that extends tort liability to anyone who knowingly aids and abets the tort of another.

■ Reconciling these competing principles within the sensitive context of a claim against a bank for aiding and abetting a customer's wrongdoing depends on a strict application of the pleading requirement for the knowledge element of the aiding and abetting claim. In other words, on demurrer, a court must carefully scrutinize whether the plaintiff has alleged the bank had actual knowledge of the underlying wrong it purportedly aided and abetted. If narrowly circumscribed in this fashion, such an aiding and abetting claim against a bank is a reasonable exception to the case law limiting bank duties to nondepositors. With this understanding, we return to our analysis of whether the Trustee has sufficiently alleged the knowledge element of his aiding and abetting claim.

The second amended complaint contains no allegation the banks knew the DFJ Fiduciaries were misappropriating funds from DFJ, or that the money deposited by the DFJ Fiduciaries into the Fraudulent Entities' accounts belonged to DFJ. As alleged, because the banks were ignorant of the *source* of the funds deposited into those accounts, they did not know that allowing the DFJ Fiduciaries to withdraw money from the accounts was assisting a diversion of corporate funds—the primary violation. Again, aiding and abetting requires participation in a specific primary wrong "with knowledge of the object to be attained." (*Lomita, supra,* 154 Cal. at p. 47.) That knowledge was absent here.

The Trustee attempts to plead around this hole in the complaint by alleging the banks "knew that the DFJ Fiduciaries were engaged in wrongful or illegal conduct . . . in breach of their fiduciary duties to the Estate." But as *Sharp* and *Neilson* make clear, the complaint must allege the defendant's actual knowledge of the specific breach of fiduciary duty for which it seeks to hold the defendant liable. The Trustee's general allegation the banks knew the DFJ Fiduciaries were involved in "wrongful or illegal conduct" does not constitute sufficient pleading that the banks had actual knowledge the DFJ Fiduciaries were *misappropriating funds* from DFJ.

Nor is the Trustee's case helped by his allegation the banks knew the DFJ Fiduciaries "were making unauthorized cash withdrawals from [the banks' accounts] in breach of their fiduciary duties to the Estate and were actually involved in a criminal or dishonest and wrongful enterprise and were, at the

very least, laundering money." This "kitchen sink" allegation—either carefully parsed out or read as a whole—does not assert the banks had actual knowledge of the misappropriation at issue here.

For instance, the assertion the banks knew the DFJ Fiduciaries' "unauthorized cash withdrawals from the . . . accounts" were "in breach of their fiduciary duties to the Estate" does not allege the banks' knowledge those funds had been stolen from DFJ. The breach of fiduciary duty the allegation alludes to could have been the misappropriation of a corporate opportunity or the fiduciaries' misconduct in connection with those funds which exposed their principal, DFJ, to liability.

Likewise, the allegation the banks knew the DFJ Fiduciaries were "involved in a criminal and wrongful enterprise" is too generic to satisfy the requirement of actual knowledge of a specific primary violation. Nor is that requirement satisfied by the allegation the banks knew the DFJ Fiduciaries were "laundering money." As we have previously noted, California tort law imposes no duty on a bank to investigate or report a depositor's suspicious activities.

■ Finally, the Trustee's allegation that "each [bank] acted with knowledge of the primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct" does not satisfy the actual knowledge pleading requirement. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58] [demurrer does not admit conclusions of fact or law].) This conclusory allegation fails to identify the primary wrong and is not otherwise supported by the rest of the complaint, which fails to allege the banks knew the DFJ Fiduciaries were misappropriating funds from DFJ. ■ In reviewing the sustaining of a demurrer, "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Fiol v. Doellstedt, supra*, 50 Cal.App.4th at p. 1323.) Applying that standard, the complaint does not allege the banks' actual knowledge of the primary wrongdoing, and thus fails to state a cause of action for aiding and abetting breach of fiduciary duty. Consequently, we conclude the trial court properly sustained the demurrer to this cause of action.

*The Cause of Action for Unfair Business Practices*

The trial court additionally sustained the banks' demurrer to the Trustee's other cause of action for unfair business practices. This ruling was also correct.

The Trustee alleged the banks' conduct in allowing the DFJ Fiduciaries to open accounts in the names of sham entities, and in permitting the DFJ

Fiduciaries to engage in the various forms of suspicious account activity previously detailed here, constituted "unlawful, unfair, or fraudulent business practices within the meaning of California Business [and] Professions Code [section] 17200 . . . ." The Trustee does not argue the banks' conduct was fraudulent, and we have already concluded, *ante*, that the banks' conduct was not unlawful. The viability of this claim, then, depends on whether the conduct constituted an "unfair" practice.

In the previous section of this opinion, we discussed the case law strictly limiting the duties a bank owes to nondepositors in connection with a customer's account activities. (*Chazen, supra,* 61 Cal.App.4th at pp. 541, 545; *Chicago Title Ins. Co. v. Superior Court, supra,* 174 Cal.App.3d at p. 1159; *Sun 'n Sand, Inc. v. United California Bank, supra,* 21 Cal.3d at p. 695.) We also specifically held that on the facts alleged here, the banks lacked the specific knowledge that would have made them liable for aiding and abetting the DFJ Fiduciaries' wrongful conduct. In light of that holding, and the general limits on bank duties to nondepositors, we conclude the banks' alleged conduct cannot constitute the basis for an unfair business practices claim. Consequently, the court properly sustained the demurrer to this cause of action as well.

*The Court's Denial of Leave to Amend*

Finally, we consider the court's decision to deny the Trustee leave to file an amended complaint. That decision followed logically from the court's conclusion the *Wagoner* rule and the in pari delicto defense barred the Trustee's action. We have, however, adopted a different basis for upholding the court's decision to sustain the demurrer: the Trustee's failure to adequately plead the knowledge element of the aiding and abetting cause of action.

That issue was not specifically raised by the demurrer or addressed by the parties in their arguments before the trial court. As a result, there was no discussion in the trial court (or in the appellate briefs) of whether there is a reasonable probability the Trustee can cure that specific defect by amendment. (*Quelimane Co. v. Stewart Title Guaranty, supra,* 19 Cal.4th at p. 39 [where there is a reasonable possibility defect can be cured by amendment, leave to amend must be granted].) Given these circumstances, we believe fairness requires the Trustee be allowed an opportunity to allege, if he can, sufficient facts to establish the knowledge element of the aiding and abetting cause of action, as set forth in this opinion. We thus reverse the judgment and remand for that purpose.

## DISPOSITION

The judgment is reversed and the case remanded to the trial court to allow the Trustee an opportunity to file an amended complaint, if he so chooses. The Trustee must file the amended complaint within 30 days after issuance of the remittitur. If the Trustee fails to amend within that period, the judgment of dismissal shall be restored. In the interests of justice, each party shall bear its own costs on appeal.

Aronson, Acting P. J., and Fybel, J., concurred.

A petition for a rehearing was denied April 25, 2005, and respondents' petition for review by the Supreme Court was denied June 29, 2005. Brown, J., did not participate therein. Baxter, J., and Chin, J., were of the opinion that the petition should be granted.