**CHANCE WORLD TRADING E.C., Plaintiff,**

v.

**HERITAGE BANK OF COMMERCE; and Does One through Ten, inclusive, Defendants.**

**No. C–03–05474 RMW.**

United States District Court, N.D. California.

Nov. 7, 2005.

Alan L. Martini, David Sheuerman, for Plaintiff.

Perry J. Woodward, Breck E. Milde, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHYTE, District Judge.

Defendant Heritage Bank of Commerce moves for summary judgment on plaintiff Chance World Trading's sole remaining cause of action, aiding and abetting a fraud. For the reasons set forth below, the court grants the motion.

## I. FACTUAL BACKGROUND

Except where otherwise noted, the following facts are undisputed: Distant relatives Rajeev Sawhney and Rani Yadav–Ranjan embarked together on a business venture. Mr. Sawhney agreed that his company, Chance World Trading E.C., would finance technical testing of Ms. Yadav–Ranjan's product idea. Construction Navigator, Inc., of which Ms. Yadav–Ranjan was the president, was to be the vehicle for this venture. Chance World agreed to invest an initial $200,000 in Construction Navigator. The investment agreement was memorialized in a term sheet, which specified that the $200,000 was to be used solely for the limited purposes of technical development and testing of Ms. Yadav–Ranjan's idea.

Construction Navigator opened a checking account with Heritage Bank of Commerce. There were three designated signors on the account: Rani Yadav–Ranjan, Rajeev Sawhney, and Poonam Sawhney (Mr. Sawhney's wife). The New Account Client Worksheet indicates that the account required two signatures to authorize any transfer[1] out of the account over $10,000. Signature cards were never signed by the Sawhneys. On October 1, 2002, Chance World wired its initial investment of $200,000 to the Construction Navigator account at Heritage Bank.

---

**1.** The parties disagree as to whether the two-signature requirement applied to all transfers out of the account of over $10,000 (Chance World's position), or only checks drawn on the account for more than $10,000 (Heritage Bank's position). Heritage Bank claims that the initial account paperwork includes a notation of "2 sigs over $10,000." Decl. of Joan Leis, Ex. A. The court must consider the evidence in the light most favorable to the non-movant on a motion for summary judgment, and the notation is susceptible of Chance World's interpretation. For the purposes of this motion, the court will assume that two signatures were required for any sort of transfer out of the account of over $10,000.

Despite the terms of the investment agreement limiting use of the funds to technical development and testing, Ms. Yadav–Ranjan used these funds to pay her personal salary, office rent, and other general corporate expenses not related to the technical testing. To accomplish the alleged misappropriation of the invested funds, Ms. Yadav–Ranjan opened a second Construction Navigator account at Heritage Bank. She presented Heritage Bank's employees with a "Corporate Resolution to Open a Bank Account" signed by "President/Secretary Rani Yadav–Ranjan." This permitted the opening of another account which, unlike the first account, authorized checks signed solely by Rani Yadav–Ranjan. Subsequently, Ms. Yadav–Ranjan transferred funds from the original Construction Navigator account into the newer account, without ever acquiring the authorization of Mr. or Mrs. Sawhney.

On January 19, 2003, plaintiff sent an e-mail stating that Ms. Yadav–Ranjan was misappropriating the $200,000 plaintiff had invested and requesting a cessation of all activities in the original Construction Navigator bank account. Decl. of Breck E. Milde, Ex. C. The email purported to be from Mr. Sawhney and was addressed to several Construction Navigator personnel and "heritage@herbank.com." *Id.* According to uncontradicted testimony, heritage@herbank.com is "not a valid email address" for Heritage Bank. Dep. of Joan Leis 67:14.

Eventually, Ms. Yadav–Ranjan misappropriated the entire $200,000. None of the withdrawals of this money was authorized by more than one signature. Chance World sued Ms. Yadav–Ranjan to recover the money and eventually settled for $100,000.

Chance World filed suit against Heritage Bank for allowing this misappropriation to occur. The court granted defendant's motion to dismiss the original complaint because plaintiff had not adequately pled the existence of a contractual, statutory, or tort duty owed by defendant to plaintiff Chance World that had been breached. Subsequently, plaintiff filed an amended complaint adding new causes of action, including aiding and abetting a fraud. Only the aiding-and-abetting cause of action survived the defendant's second motion to dismiss.

## II. LEGAL ANALYSIS

### A. Legal standard

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCivP 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* A party moving for summary judgment who does not have the ultimate burden of persuasion at trial has the initial burden of producing evidence negating an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000).

Jurisdiction in this case is based on diversity of citizenship, *see* 28 U.S.C. § 1332(a)(2), and this court must therefore use California law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Ninth Circuit has explained courts are to determine state law thusly:

When interpreting state law, federal courts are bound by decisions of the

state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. However, where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts. *Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (1996) (internal quotation marks and citations omitted); *see also Vestar Dev. II, LLC v. Gen. Dynamics Corp.,* 249 F.3d 958, 960 (9th Cir.2001).

■ In California, a claim for aiding and abetting a tort requires two things: knowledge of the underlying tort, and substantial assistance in its commission. The law pertinent to plaintiff's claim is most clearly stated in *Saunders v. Superior Court:* "Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." 27 Cal.App.4th 832, 846, 33 Cal.Rptr.2d 438 (1994). A later court emphasized that "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." *Casey v. U.S. Bank Nat'l Ass'n,* 127 Cal.App.4th 1138, 1147, 26 Cal.Rptr.3d 401 (2005). California courts have acknowledged that the tort of aiding and abetting is at odds with statutory limitations on bank liability, *see* Cal. Fin.Code § 952,[2] but the court in *Ca-*

*sey* nonetheless held that a bank can be liable for aiding and abetting if it had "actual knowledge" of the underlying wrong. *Id.* at 1152–53, 26 Cal.Rptr.3d 401.

However, on the specific facts in *Casey,* the court held that allegations that the defendant banks allowed officers of a group of investment companies to engage in "skullduggery" was insufficient as an allegation the banks had knowledge that the officers were breaching fiduciary duties, and thus aiding-and-abetting liability could not attach to the banks. 127 Cal.App.4th at 1151, 26 Cal.Rptr.3d 401. Specifically, the plaintiff had alleged that

> the banks aided and abetted the [officers] in this money laundering scheme by allowing them to open accounts with invalid tax identification numbers, which accounts were then used to drain funds from the Estate to the accounts of individual directors, officers, their families and affiliated companies; allowing large sums of cash, often in excess of $250,000 at a time and aggregating some $6 million, to be removed from [the banks'] cash vaults (in unmarked duffel bags); violating banking regulations and the [banks'] own internal policies and procedures; allowing obviously forged negotiable instruments to be paid; and, ignoring monetary restrictions ('not to exceed' limits) appearing on the face of individual checks by paying sums in excess of such limits.

*Id.* at 1142, 26 Cal.Rptr.3d 401 (internal quotation marks omitted; second and third alterations in original). In spite of this egregious conduct, the court in *Casey* held that knowledge of such atypical banking procedures did not constitute actual knowl-

---

**2.** This section generally requires a bank to ignore all demands made upon an account by anyone other than an account holder. There are exceptions for actions compelled by court order, and for account freezes of up to three days demanded by an adverse claimant who presents the bank with an affidavit. Cal. Fin. Code § 952(a), (b). Neither of these exceptions apply to the instant case.

edge of the "underlying tort" required in a claim for aiding and abetting. *Id.* at 1151, 26 Cal.Rptr.3d 401. The court held that "the banks' alleged knowledge of ... suspicious account activities—even money laundering—*without more*, does not give rise to tort liability for the banks." *Id.* (emphasis in original).

## B. Application

In its motion for summary judgment, Heritage Bank does not deny that Chance World has evidence that Heritage Bank provided substantial assistance to Ms. Yadav–Ranjan's transfer and withdrawal of the funds originally deposited in the Construction Navigator account, which required two signatures for the transfer or withdrawal of sums over $10,000. The disposition of Heritage Bank's motion instead hinges on whether Chance World has raised a triable issue of material fact on the issue of whether Heritage Bank had actual knowledge of Ms. Yadav–Ranjan's fraud. Chance World has not.

Chance World argues that from some combination of the following list of facts [3] an inference can be drawn that Heritage Bank knew Ms. Yadav–Ranjan was fraudulently misappropriating the $200,000 investment:

(1) Heritage Bank knew Construction Navigator was a start-up company funded by a venture capital firm, Chance World;

(2) Heritage Bank knew that the initial $200,000 deposit into the Construction Navigator money market account came from Chance World;

(3) Heritage Bank had a copy of the "term sheet" between Chance World and Construction Navigator;

(4) Heritage Bank knew that Chance World was purchasing 51 percent of the Construction Navigator stock;

(5) withdrawals for more than $10,000 authorized solely by Ms. Yadav–Ranjan were forbidden by the terms of the bank account, the Construction Navigator corporate charter, and California corporate law; and

(6) Heritage Bank allowed Construction Navigator to open a corporate banking account before receiving a corporate resolution authorizing the opening of a bank account, which was against Heritage Bank's policy.

Even assuming, for the sake of argument, that all of the above statements are supported by admissible evidence, Chance World's contentions are unavailing.

That Chance World was a venture capitalist or funded Construction Navigator does not compel the inference that Ms. Yadav–Ranjan was misusing funds. (Otherwise, venture capital firms would never fund start-up companies.) The term sheet contains in very general terms the substance of the agreement between Chance World and Construction Navigator; it contains no restrictions on Construction Navigator's use of funds. That Chance World was acquiring a majority interest in Construction Navigator does not imply Heritage Bank knew of Ms. Yadav–Ranjan's misdealings.

Even if the transfers out of Construction Navigator's accounts did not comport with Heritage Bank rules or California corporate law, that alone is insufficient to show that Heritage Bank was aware of Ms. Yadav–Ranjan's misuse of funds. Plaintiff, citing *Casey* and *Neilson v. Union Bank of California*, 290 F.Supp.2d 1101 (C.D.Cal. 2003), claims that such "atypical banking procedures" are, as a matter of California law, evidence that a bank knows of the fraudulent behavior of a client. Plaintiff has misapplied these two cases to the in-

---

**3.** The evidence presented does not support all these purported facts.

stant situation. The alleged irregularities in this case, considered in the light most favorable to Chance World, pale in comparison to the activities alleged in *Casey.* The court in *Casey* specifically held that allegations that the defendant banks violated their "own internal policies and procedures" were insufficient as allegations the banks were aware of fiduciary breaches committed by customers. 127 Cal.App.4th at 1142, 1151, 26 Cal.Rptr.3d 401. As a matter of California law, Heritage Bank's failure to adhere to a two-signature requirement or follow other internal policies regarding the documents required for corporate checking accounts cannot constitute knowledge that Ms. Yadav–Ranjan was engaged in any fraudulent activity.[4]

Chance World claims that *Neilson* stands for the proposition that "atypical banking procedures" allow an inference that a bank had knowledge of a client's crimes. Chance World distorts *Neilson.* The court in *Neilson* had to consider whether a plaintiff had adequately pleaded the knowledge element of an aiding-and-abetting cause of action. 290 F.Supp.2d at 1119–20. The court ruled that although the plaintiff had not directly alleged that the defendant banks knew of their client's illegal activities, other statements in the complaint were sufficient as allegations of the banks' knowledge. *Id.* at 1121. The court stated:

> While it is true the complaint does not directly state that the Banks knew Slatkin was running a Ponzi scheme and stealing investor funds, this is the net effect of allegations that the Banks knew of Slatkin's "fraud," "actively participated" in the Ponzi scheme with knowledge of his "crimes," and accommodated him

by using atypical banking procedures to service his accounts.

*Id.* Reading the phrase "atypical banking procedures" in context in the decision, it seems unlikely the *Neilson* court would have found allegations of atypical banking procedures alone sufficient as an allegation of knowledge by the banks. Even if plaintiff's reading of *Neilson* was correct, this court must, under *Lewis,* use *Casey* as a source of California law. Under *Casey,* Chance World must produce evidence that Heritage Bank had actual knowledge of Ms. Yadav–Ranjan's crimes; it cannot rely on inferences drawn from sloppy work by Heritage Bank. *See Casey,* 127 Cal.App.4th at 1151, 26 Cal.Rptr.3d 401.

Even though not required for Heritage Bank to succeed on its motion for summary judgment, Heritage Bank has produced evidence that it did not know of Ms. Yadav–Ranjan's fraud. Two of Heritage Bank's employees have testified in depositions that they were unaware that Ms. Yadav–Ranjan was misusing Chance World's funds. From the available evidence, it appears that Chance World's only attempt to notify Heritage Bank of Ms. Yadav–Ranjan's wrongdoing before it was completed is the e-mail misaddressed to heritage@herbank.com.

In short, under California law, the inference that Heritage Bank knew of Ms. Yadav–Ranjan's fraud cannot be drawn from evidence that Heritage Bank did not follow its own internal rules, and the only other evidence Chance World has produced that could show knowledge by Heritage Bank is an e-mail, which, according to uncontradicted testimony, was not sent to a valid address for the bank. While there are

---

**4.** Heritage Bank's alleged mishandling of the Construction Navigator account seems even more innocuous in light of California corporations law, which gives "the chairman of the board, the president or any vice president and the secretary, any assistant secretary, the chief financial officer or any assistant treasurer of such corporation" apparent authority to execute any written instrument. Cal. Corp. Code § 313.

many facts in dispute between the parties, none are germane to what Heritage Bank knew about Ms. Yadav–Ranjan's activities. Chance World has offered no evidence that shows Heritage Bank had the requisite knowledge to be held liable, under California law, for aiding and abetting Ms. Yadav–Ranjan's fraud. Since knowledge of the underlying tort is an essential element of Chance World's aiding-and-abetting cause of action, summary judgment for Heritage Bank is appropriate.

### III.  ORDER

For the foregoing reasons, the court grants defendant Heritage Bank's motion for summary judgment.