Filed 4/30/24

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SACRAMENTO MUNICIPAL UTILITY DISTRICT, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DAVID KWAN, <br><br> Defendant and Appellant. | C097382 <br><br> (Super. Ct. No. 34-2013-00143235-CU-MC-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Kenneth C. Mennemeier, Jr., Judge.  Affirmed.

Law Office of Stephanie J. Finelli and Stephanie J. Finelli for Defendant and Appellant.

Quinn Covarrubias, George E. Murphy, Stephanie L. Quinn; and Randall J. Hakes for Plaintiff and Respondent.

Plaintiff Sacramento Municipal Utility District (District) opened an electrical service account for defendant David Kwan.  The District later discovered power from the

1

account being diverted to support a cannabis grow operation. The trial court found Kwan liable for aiding and abetting utility diversion and awarded treble damages plus attorney fees. Kwan appeals, alleging there was insufficient evidence he had knowledge of the power theft and challenging the monetary awards. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The District filed a complaint against Kwan on April 12, 2013, alleging claims for power theft, conversion, and account stated. The parties had a trial, the trial court granted a retrial, and we affirmed that judgment. (*Sacramento Municipal Utility District v. Kwan* (May 15, 2019, C080474) [nonpub. opn.].)

The retrial was held in July 2022 and was a trial to the court. The District's witnesses testified to an account being created for Kwan at a house in Sacramento in early November 2011. Initially, the District detected power usage at the address but there was no customer on record so the District disconnected power. Later that day, someone called in to request service at that location using Kwan's name and provided his birth date, driver's license number, and social security number. The caller then correctly answered three questions required by a third-party consumer credit reporting service to further verify Kwan's identity. The District consequently opened an account under Kwan's name for the address and resumed service.

On August 27, 2012, the District's employees suspected the address was diverting power for a cannabis grow operation. After the District contacted law enforcement officials, a District employee entered the house on October 15, 2012, and found a cannabis grow operation in every room of the house and an electrical bypass permitting power diversion, though some fans for the operation were using metered power from outlets. The District terminated electricity service to the property that day and determined its lost profit of $27,553.71 by calculating the total power used at the address, which assumed diversion began on the date the account opened, and then subtracted the amount billed for legitimate power usage.

2

Kwan asserted he did not open the account, was the victim of identity theft, and initially stated during pretrial discovery that he had no connection to Sacramento.

The District produced evidence countering this defense: Kwan's phone records showed he had called a Sacramento area 916 number numerous times starting in November 2011; Kwan purchased nearly $800 of equipment from a hydroponic store in March 2011 that could be used to grow cannabis; and Kwan received six cash payments totaling $2,500 from December 2011 to August 2012.

At trial, Kwan claimed he had met a woman who lived in Sacramento around November 2011 and asserted she was likely the 916 number he had called and that she could have stolen his personal information from his mail.

On September 8, 2022, the trial court issued its ruling finding the District met its burden of proof on the power theft cause of action. The court noted Kwan's only defense was identity theft, but it found the District's verification process pointed "to Kwan being the person who authorized the creation of the account." Conversely, the court found Kwan's identity theft evidence unavailing and "Kwan's credibility lacking." Thus, the court found based on this evidence and its assessment of witness credibility, Kwan aided and abetted the diversion of the District's electricity in violation of Civil Code[1] section 1882.1.

The trial court found against the District on the other causes of action because "Kwan never agreed to [the District]'s restated bill" and the District's "evidence did not establish that Kwan personally took or benefited from the power diversion."

For damages, the trial court noted the District calculated its lost profit from the date utility service started in November 2011 through when service ended on October 15, 2012. The court stated: "In the context of a criminal case, the Third District Court of

---

[1] Undesignated section references are to the Civil Code.

3

Appeal validated this manner of calculation. *See People v. Phu*[ (2009) 179 Cal.App.4th] 280. [¶] Here, those calculations yielded $27,553.71. . . . The [c]ourt finds that the evidence, and [the District]'s calculations, support that number." The court also found treble damages appropriate because the evidence "Kwan either opened the [District] account, or allowed a third party to use his identification to do so, is strong." The total award was $82,661.13 "plus the costs of suit and reasonable attorney[] fees." The court later awarded $82,000 as the District's reasonable costs, including attorney fees.

Kwan appeals.

## DISCUSSION

### I

*Substantial Evidence Supported Kwan Aided And Abetted Power Diversion*

Kwan contends the finding of power theft lacked substantial evidence because there "was no finding, and no evidence, Kwan knew that anyone planned to divert or steal power." Specifically, Kwan argues that even if there may have been evidence he aided in creating the District account, this is insufficient for the additional step of aiding and abetting power theft, which Kwan asserts "requires more than simply being the customer of record for the location of the power theft." We conclude there was sufficient evidence.

"A utility may bring a civil action for damages against any person who commits, authorizes, solicits, aids, abets, or attempts" to "[d]ivert[], or causes to be diverted, utility services by any means whatsoever." (§ 1882.1, subd. (a).) "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1145.) Courts have phrased this as " ' " 'a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act' " ' " or "an alleged aider and abettor must have

4

'acted with the intent of facilitating the commission of that tort.' " (*George v. eBay, Inc.* (2021) 71 Cal.App.5th 620, 641-642.)

"Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and ' "substantial" proof of the essentials [that] the law requires in a particular case.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006.) " '[C]ircumstantial evidence and any reasonable inferences drawn from that evidence' may constitute substantial evidence." (*People v. Grant* (2020) 57 Cal.App.5th 323, 331.)

We have no difficulty finding substantial evidence that Kwan aided and abetted power diversion. In his reply brief, Kwan is not contesting the evidence he knowingly participated in opening the District account, and there was evidence that he knew the account would be used for power diversion: Months before the account was opened, Kwan purchased equipment from a hydroponics store that could be used to grow cannabis; at the time the District account was opened, Kwan made numerous calls to a 916 number demonstrating a connection to the geographic area of the District account; and the cash deposits Kwan made correspond directly with the period of the power theft, demonstrating he could have collected money from the cannabis grow operation. Though the trial court did not find sufficient evidence Kwan directly benefited from the power theft, the evidence still supports a reasonable inference Kwan aided and abetted the grow operation and consequently, the power theft. We thus conclude substantial evidence supported the trial court's finding that Kwan aided and abetted power diversion.

II

*The Trial Court Did Not Err In Ordering The Monetary Awards*

Kwan also challenges the trial court's damages award, its decision to treble damages, and its decision to award attorney fees. For damages, Kwan contends the District "did not prove any such damages prior to August 27, 2012 [the date of discovery]. As such, [the District] should not have been awarded any damages for

5

alleged power theft prior to that date." He asserts *People v. Phu*, *supra*, 179 Cal.App.4th at page 280 is inapplicable because it involved a violation of a criminal statute. We conclude there was no error in the monetary awards.

"In any civil action brought pursuant to [s]ection 1882.1, the utility may recover as damages three times the amount of actual damages, if any, plus the cost of the suit and reasonable attorney[] fees." (§ 1882.2.) The term "actual damages" typically means compensatory damages. (*Maarten v. Cohanzad* (2023) 95 Cal.App.5th 596, 624.) Compensatory damages are calculated as "the amount [that] will compensate for all the detriment proximately caused thereby." (§ 3333.) "Damages must, in all cases, be reasonable." (§ 3359.)

" 'Whether a plaintiff is "entitled to a particular measure of damages is a question of law subject to de novo review. [Citations.] The amount of damages, on the other hand, is a fact question . . . [and] an award of damages will not be disturbed if it is supported by substantial evidence." ' " (*Madani v. Rabinowitz* (2020) 45 Cal.App.5th 602, 610.)

Here, there is no question that the District suffered an injury. Power was diverted and the District was not paid for it. The District argues this is enough to find reasonable the "approximation" the injury began on the date the account opened. It cites to cases involving loss of business profit that state: " 'Where the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty. [Citations.] The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 774.) But this standard is not compatible with utility diversion cases like this one.

The legal distinction between proving the fact of injury and proving the amount of damage is important here. As we have explained: " 'Injury' refers to the fact of harm suffered by the plaintiff due to the defendant's conduct. 'Damages' refers to the

6

monetary sum that the plaintiff may be awarded as compensation for the injury. To recover in tort, the plaintiff must prove the fact of proximately caused injury with reasonable certainty. [Citation.] When the fact of proximately caused injury is proven sufficiently, the measure of damages to be awarded need only be shown with the degree of certainty that the circumstances of the case permit. [Citation.] But where the fact of proximately caused injury is not proven with reasonable certainty, the plaintiff cannot recover regardless of how much evidence was introduced to show the measure of the recovery sought by the plaintiff." (*Lueter v. Cal.* (2002) 94 Cal.App.4th 1285, 1302-1303.)

In a typical loss of business profit case, a discrete injury causes all damages, such as from a breach of contract, and the amount of the resulting damage may not be subject to mathematical precision. (See, e.g., *Sargon Enterprises, Inc. v. University of Southern California*, *supra*, 55 Cal.4th at p. 753 [lost profit damages from a breach of contract related to clinical studies of patented product].) Thus, in loss of business profit cases, the contested damages issue is more often the amount of *damages*. Conversely, in utility theft cases like this one, there is an ongoing injury causing damages. The amount of those damages is more easily susceptible to mathematical precision because it is simply the value of the utility (power) being unlawfully diverted. But the period of injury may be uncertain. Thus, in these cases, the contested damages issue is more often the extent of the *injury*.

With this framework in mind, it may not be appropriate in every section 1882.1 case to assess damages from the date the account was created. An account holder who legitimately opens an account and uses it properly for a long period of time but then later illegally diverts power cannot be liable under civil law to pay for diversion from the time the account was created because the injury did not begin then. This would result in an unreasonable benefit to the utility provider. (*Smith v. Superior Court* (1992) 10 Cal.App.4th 1033, 1037 [" 'It is a fundamental principle of the law of damages . . .

7

that the compensation received shall be commensurate with the injury, and no more' "].)
But conversely, a defendant who has been found liable for utility diversion should not benefit from the secrecy of his or her theft by assuming the injury began at the date of discovery. (§ 3517 ["No one can take advantage of his [or her] own wrong"].) It instead depends on the evidence of each case to establish "the fact of proximately caused injury with reasonable certainty." (*Lueter v. Cal.*, *supra*, 94 Cal.App.4th at p. 1303.)

For these reasons, our opinion in *Phu* is inapplicable, which relied on the criminal law considerations for restitution. (See *People v. Phu*, *supra*, 179 Cal.App.4th at p. 284 ["Selecting the earlier date was the best guarantee that the victim would receive full compensation"].)

Still, in this instance, we conclude the District established the fact of the proximately caused injury from the date of account creation with reasonable certainty. Before the account was created in Kwan's name, power had been used at the house without an associated account holder, which is why the District initially shut it off. Further, Kwan's calls to a 916 number started in November 2011, cash payments to Kwan started in December 2011, and when the District's employees entered the home, nobody was living there and every room was used for the grow operation. This is substantial evidence the account was set up exclusively for the grow operation and this operation began when the account was opened, running until the District terminated service in October 2012. Accordingly, the trial court properly awarded the District damages for the entire period.

We also conclude the trial court did not err in awarding treble damages or attorney fees. The trial court had discretion to do so under section 1882.2. Kwan's argument against trebling is that "it is an abuse of discretion to award such damages absent evidence that Kwan was aware of the power theft." Kwan similarly challenges the award of attorney fees, stating: "Given the absence of any evidence that Kwan had any knowledge of the power theft, it was excessive to order him to pay . . . attorney fees."

8

We have already rejected Kwan's argument that the evidence was insufficient to demonstrate his knowledge, and so we reject this argument as a basis for finding an abuse of discretion on trebling damages and awarding attorney fees.

We therefore conclude the trial court's monetary awards were not erroneous.

## DISPOSITION

The judgment is affirmed.  The District shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


/s/ _____
ROBIE, Acting P. J.


We concur:


/s/ _____
KRAUSE, J.


/s/ _____
MESIWALA, J.

9