Filed 11/3/15  Valdes v. East West Bank CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROSEL HENSON VALDES et al., | B256964 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC495517) |
| v. | |
| EAST WEST BANK, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debre Katz Weintraub, Judge.  Affirmed.

Law Offices of Edna V. Wenning and Edna V. Wenning; Alexander W. Kirkpatrick for Plaintiffs and Appellants.

Jung & Yuen, Curtis C. Jung, Clifford P. Jung, and Elizabeth A. Frye for Defendant and Respondent.

_____

Appellant Rosel Henson Valdes, individually and on behalf of a family trust, filed this action against respondent East West Bank and other third parties after she was defrauded by a former employee of another bank. At the employee's direction, Valdes purchased cashier's checks, which Valdes intended to be used to invest in certificates of deposit at Wachovia Bank or Wells Fargo Bank. The employee instead deposited the checks into accounts that she had opened in the names of fictitious corporations at East West Bank. The trial court sustained East West Bank's demurrer to Valdes's third amended complaint without leave to amend and dismissed the action against East West Bank with prejudice. We conclude that the trial court properly sustained the demurrer without leave to amend, and accordingly, affirm the judgment of dismissal.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Valdes Sues East West Bank for Negligence and Fraud

On November 13, 2012, Valdes, acting on her own behalf and as the trustee of the Valdes Family Trust, commenced this civil action against various individuals and banks, including Citibank, Wachovia Bank, Wells Fargo Bank, and East West Bank.[1] After the trial court sustained East West Bank's demurrers to Valdes's first and second amended complaints with leave to amend, Valdes filed a third amended complaint, alleging two causes of action against East West Bank for negligence and fraud.

As set forth in the third amended complaint, Melinda Campano was a bank manager initially employed by Wachovia Bank, and then by Wachovia Bank's successor-in-interest, Wells Fargo Bank. In or about January 2009, Campano persuaded Valdes to invest in certificates of deposit, which Campano told Valdes could be purchased through Wachovia Bank or its affiliate. Over a period of two years, Valdes withdrew a total of $735,000 from an account that she held at Citibank and turned those funds over to Campano for the sole purpose of investing in certificates of deposit at Wachovia Bank or

---

[1] East West Bank is the only named defendant that is a party to this appeal.

Wells Fargo Bank. Campano instead deposited those funds into bank accounts that were held in her name or in the name of sham businesses she controlled.

Specifically, at Campano's direction, Valdes purchased cashier's checks totaling $400,000 with funds from Valdes's Citibank account. The checks were made payable to "Wachovia." Unbeknownst to Valdes, however, Campano returned those checks to Citibank, and with the assistance of two Citibank employees, obtained new cashier's checks totaling $390,000, along with $10,000 in cash, with funds from Valdes's Citibank account. The new cashier's checks also were made payable to "Wachovia," but added the account number for Campano's personal account at Wachovia Bank. Campano then deposited the cashier's checks into her personal Wachovia account.

At Campano's direction, Valdes also purchased cashier's checks totaling $235,000 with funds from her Citibank account. The checks were made payable to "SDC," "RSI," or "SBI." Campano told Valdes that "SDC" stood for "Secured Deposit Certificate" and that "RSI" stood for "Rate Secured Interest," and instructed Valdes to use the initials "SDC" or "RSI" in identifying the payee on the checks. Without Valdes's knowledge or consent, Campano then deposited the cashier's checks into accounts that she had opened at East West Bank in the name of two corporate entities, Stargate Development Corporation and Regency Stones International. The checks made payable to "SDC" were deposited into Stargate Development Corporation's East West Bank account, and the checks made payable to "RSI" were deposited into Regency Stones International's East West Bank account. Campano and her husband were the sole officers, directors, and shareholders of each corporation. Both entities were fictitious corporations established by Campano for the purpose of embezzling money from Valdes and other individuals by "using the acronyms of these sham entities" to receive the stolen funds. In addition to the money stolen from Valdes, Campano embezzled millions of dollars from other victims of

her fraudulent scheme and deposited a substantial portion of those funds into the accounts that she held at East West Bank.[2]

In her first cause of action for common law negligence, Valdes alleged that each of the defendant banks breached a duty of care owed to her by engaging in conduct that fell below the prevailing standards of practice in the banking industry. With respect to East West Bank, Valdes specifically alleged: "East West Bank provided a safe haven for the fruits of [Campano's] fraudulent scheme by accepting deposits into bank accounts where the payee was not the account holder and/or endorser. It disregarded the validity of the endorsements and accepted checks with improper endorsements. [¶] . . . East West Bank's internal controls should have established the true identity of its customer, established the legitimacy of the customer's business activities and sources of income, funds, and other wealth. Given the sheer volume alone of cashier's checks being deposited by [Campano] into her accounts at East West Bank, with improper endorsements and/or where the payee was not the account holder and/or endorser, East West Bank should have conducted sufficient research and monitoring. Instead, East West Bank opened bank accounts for sham corporations that lacked proper foundation and standing except to serve as sham repositories for the spoils of [Campano] and her cohorts. . . . [¶] . . . East West Bank was in a position that if it had made reasonable inquiries and/or if its internal controls were within industry standards, it could have discovered [Campano's] fraud and aborted its success."

In her sixth cause of action for fraud, deceit, and misrepresentation, Valdes alleged that each of the defendant banks engaged in conduct that "helped [Campano] perpetuate her fraudulent schemes for about 10 years," and then "covered up the fact that they recklessly[ ] or intentionally aided and abetted [Campano's] fraudulent scheme." Valdes alleged that East West Bank's practice of "accepting deposits into bank accounts where the payee was not the account holder and/or endorser . . . would not have prospered

---

[2] Campano was later charged with felony mail fraud by the United States Attorney's Office for the Central District of California and entered a guilty plea to that charge.

4

without the active participation of East West [Bank] employees in supervisory or managerial capacities who were aware of [Campano's] fraudulent practices." Valdes further alleged that East West Bank "ignored its customer's suspicious activities" in depositing "a large volume of cashier's checks or fund transfers . . . to accounts that were non-existing," and engaged in fraudulent conduct by "crediting [the] embezzler's accounts with checks drawn payable to SDI, RSI, and SDC." In addition, Valdes alleged that East West Bank acted as "a conduit, whether negligently or intentionally, in [Campano's] fraudulent scheme which directly resulted in damages to [Valdes] in an amount at least $235,000."

## II.     The Trial Court Sustains The Demurrer to the Third Amended Complaint

East West Bank filed a demurrer to Valdes's third amended complaint. Among other arguments, East West Bank asserted that the cause of action for negligence failed as a matter of law because it did not owe a duty of care to Valdes, who was a non-customer and non-depositor of the bank. East West Bank also argued that Valdes could not state a cause of action for fraud, deceit, and misrepresentation because she failed to plead the elements of the claim with particularity, including specific facts showing how, when, where and by whom any alleged misrepresentation was made. In her opposition, Valdes contended that the circumstances relating to Campano's deposit of checks into East West Bank accounts where the payee was not the account holder or endorser were sufficiently suspicious to give rise to a duty of care to a non-customer or non-depositor drawer of the checks. Valdes also claimed that she had pleaded specific facts about East West Bank's conduct which were sufficient to support both her negligence and fraud causes of action.

On February 20, 2014, the trial court sustained East West Bank's demurrer to the third amended complaint without leave to amend. As to the cause of action for negligence, the court concluded that Valdes had failed to plead facts sufficient to show that East West Bank owed her a duty of care as a non-customer of the bank. The court noted that banks generally do not have a duty to non-depositors to investigate or disclose suspicious activity on the part of account holders. The court found that, in this case, East

5

West Bank did not owe a duty to Valdes to monitor Campano's accounts for suspicious activity or to confirm whether the checks that Valdes had made payable to SDC and RSI "were intended to be paid to a corporation whose initials are consistent with those of the name[d] 'payee.'" As to the cause of action for fraud, deceit, and misrepresentation, the court concluded that Valdes had failed to plead facts with the "requisite specificity" to state a claim for fraud against East West Bank. On June 13, 2014, following the trial court's entry of a judgment dismissing the third amended complaint against East West Bank with prejudice, Valdes appealed.

## DISCUSSION

On appeal, Valdes challenges the trial court's order sustaining East West Bank's demurrer to her third amended complaint without leave to amend. She asserts that the trial court erred in sustaining the demurrer to her cause of action for negligence because she pleaded sufficient facts to support a claim that East West Bank breached a duty of care owed to her by allowing the deposit of cashier's checks that were deficient on their face, and thus, indicative of fraud. She also argues that the trial court erred in sustaining the demurer without leave to amend because she pleaded sufficient facts to state a new cause of action against East West Bank for aiding and abetting a breach of fiduciary duty. Valdes contends that the allegations in the third amended complaint are sufficient to state a cause of action against East West Bank under either of these legal theories.[3]

## I.    Standard of Review

In reviewing the sufficiency of a complaint against a demurrer, we treat "'the demurrer as admitting all material facts properly pleaded.'" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810.) We give the complaint a reasonable interpretation and read the allegations in context. (*Schifando v. City of Los Angeles*

---

[3]    On appeal, Valdes does not challenge the trial court's order sustaining East West Bank's demurrer to the sixth cause of action for fraud, deceit, and misrepresentation.

6

(2003) 31 Cal.4th 1074, 1081.)  We also consider matters that may be judicially noticed.[4]  (*Ibid.*)  When a demurrer is sustained, we determine de novo whether the complaint alleges facts sufficient to state a cause of action under any legal theory.  (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)  When a demurrer is sustained without leave to amend, we also decide whether there is a reasonable possibility that the defect can be cured by amendment.  (*Schifando v. City of Los Angeles*, *supra*, at p. 1081.)  "If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred.  [Citation.]  The plaintiff has the burden of proving that an amendment would cure the defect.  [Citation.]"  (*Ibid.*)[5]

---

[4]      In her opening appellate brief, Valdes requests that we "take judicial notice of the existence of certain pleadings in *O'Connor, et al. v. Wells Fargo Bank, N.A., et al.*, San Francisco Superior Court case no. CGC-2-0522076," a civil action filed by other individuals who were similarly defrauded by Campano.  However, Valdes did not file a separate motion requesting judicial notice, as required by California Rules of Court, rule 8.252(a)(1).  She also has failed to identify which specific pleadings are the subject of her request, or to articulate how such pleadings are relevant to the issues raised in this appeal.  We therefore deny Valdes's request for judicial notice.  (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 483 [reviewing court "may decline to take judicial notice of matters that are not relevant to dispositive issues on appeal"].)  East West Bank has filed a separate motion requesting judicial notice of the special verdict form and judgment entered in favor of Wells Fargo Bank in this action following a jury trial on Valdes's causes of action against Wells Fargo Bank.  Because neither of these documents is relevant to our determination of whether Valdes's third amended complaint alleges sufficient facts to state a cause of action against East West Bank, we deny East West Bank's request for judicial notice.

[5]      East West Bank asserts that Valdes's appeal should be dismissed because she failed to provide an adequate record to allow for review of the trial court's ruling on the demurrer.  The record reflects that Valdes submitted an appellant's appendix which includes each complaint filed in the action including the third amended complaint, East West Bank's demurrer to the third amended complaint and supporting papers, Valdes's opposition to the demurrer and supporting papers, and the trial court's judgment dismissing the third amended complaint against East West Bank with prejudice.  Valdes also submitted a reporter's transcript of the hearing on the demurrer.  This constitutes an adequate record for review of the sufficiency of the third amended complaint.

7

## II.     Negligence

In her first cause of action for negligence, Valdes alleged that East West Bank owed her a limited duty of care as a non-customer drawer of checks that were presented for deposit by a third party under suspicious circumstances.  Valdes alleged that East West Bank breached its duty of care by allowing the checks to be deposited into accounts held at the bank where the name of the payee on the check was not the same as the name of the account holder.  We conclude the trial court properly sustained East West Bank's demurrer to the cause of action for negligence because Valdes failed to plead sufficient facts to support the existence of a duty of care owed to her by East West Bank.

To state a cause of action for negligence, a plaintiff must plead that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's injuries.  (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1145.)  "'"'The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion.  [Citations.]  Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court."  [Citations.]'  [Citation.]'"  (*Paz v. State of California* (2000) 22 Cal.4th 550, 559.)

A bank has a duty to act with reasonable care in its business dealings with its customers, which arises out of the contract between the customer and the bank.  (*Rodriguez v. Bank of the West* (2008) 162 Cal.App.4th 454, 460 ["[a] bank's basic duty of care – to act with reasonable care in its transactions with its customers – arises out of the bank's contract with its customer"]; *Chazen v. Centennial Bank* (1998) 61 Cal.App.4th 532, 543 (*Chazen*) [bank's "'duty to act with reasonable care in its transactions with its depositors . . .' is an implied term in the contract between the bank and its depositor"].)  On the other hand, "absent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer."  (*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 479 (*Software Design*).)  This means that "under California law, a bank owes no duty to nondepositors to investigate or

8

disclose suspicious activities on the part of an account holder." (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1149 (*Casey*).) As California courts have observed, "a considerable burden would be imposed on . . . banks[ ] and their customers if we were to find that those institutions had to inquire into the activities of both the makers and payees of checks regarding the possibility of internal fraud, and the flow of commerce would be substantially impeded." (*Karen Kane, Inc. v. Bank of America* (1998) 67 Cal.App.4th 1192, 1199 (*Karen Kane*); see also *Chicago Title Ins. Co. v. Superior Court* (1985) 174 Cal.App.3d 1142, 1159 ["[w]e refuse to recognize . . . a duty by banks to inform on suspicious customers, and we thereby avoid the loss of privacy, expense and commercial havoc that would result from such a holding"].)

In *Software Design*, *supra*, 49 Cal.App.4th 472, for instance, the owner of a foreign corporation called Software Design and Application, Ltd. (SDA) hired a financial consultant to manage his company's investments. Instead of opening brokerage accounts on behalf of SDA, however, the consultant surreptitiously opened accounts on behalf of a fictitious partnership under the same company name, and arranged for the transfer of SDA's investment portfolio to those accounts. Without SDA's knowledge or consent, the consultant then systematically withdrew the funds from the brokerage accounts and deposited them into bank accounts that his relative had opened in the name of the fictitious partnership. After SDA and its owner filed suit against the banks and brokerage firms for negligence, the trial court sustained the defendants' demurrers to the complaint on the ground that none of them owed a duty of care to SDA. (*Id.* at pp. 467-478.)

In affirming the order sustaining the demurrer, the court of appeal in *Software Design* concluded: "The primary flaw in [the] negligence theory is that none of the [defendants] had any relationship with [the owner] or SDA. [SDA and its owner] are not customers or past customers of the banks or the brokerage firms. They are, therefore, strangers to the contractual relationships between [the defendants] and the thieves." (*Software Design*, *supra*, 49 Cal.App.4th at pp. 478-479.) In rejecting SDA's argument that the defendants did not follow standard industry practices in opening or monitoring the accounts, the court explained that such practices do not impose a duty on banks "to

9

*protect strangers with whom they do no business*," but rather "exist to protect the banks." (*Id*. at p. 482.) The court also concluded that the circumstances surrounding the opening of the accounts and the subsequent transactions "were not so suspicious as to trigger a duty to investigate the phony partnership for the benefit of strangers." (*Ibid*.) The court noted that "nothing in [the] transactions gave any inkling that SDA . . . was a potential victim" of fraud. (*Ibid*.) The court also observed that the "withdrawals and transfers were made pursuant to the instructions of . . . [the] customer and signatory on the accounts," and that "[a]ccount activity, whether in large sums or small, whether frequent or infrequent, . . . is expected, routine behavior." (*Id*. at p. 483; see also *Karen Kane*, *supra*, 67 Cal.App.4th at p. 1202 [bank did not owe duty to non-customer company to inquire into validity of checks drawn in its name by a defrauding company employee where company "had no relationship with the Bank and the Bank did nothing more than allow its customer . . . to deposit checks into its own account"]; *Chazen*, *supra*, 61 Cal.App.4th at p. 543 [bank did not owe duty to non-depositor to monitor irregular transactions in mortgage trust accounts held by non-depositor's loan broker because "provisions of the deposit agreement . . . were not intended to be for the protection of third parties, unknown to the bank, who were not parties to the deposit agreements"].)

While acknowledging that a bank generally has no duty of care to a non-customer or non-depositor, Valdes nevertheless asserts that East West Bank owed her limited duty of care under *Sun 'n Sand, Inc. v. United California Bank* (1978) 21 Cal.3d 671 (*Sun 'n Sand*) and its progeny. In *Sun 'n Sand*, an employee of the plaintiff company prepared a number of checks payable to the defendant bank and arranged for a corporate officer to sign them. The employee then altered the amounts on the checks and presented them for deposit into her personal account at the same bank. Although the bank was itself the named payee, it allowed the checks to be deposited into the employee's account without inquiry. The company sued the bank for negligence, contending that the bank breached a duty of care in permitting the deposit of the checks. In reversing an order sustaining the bank's demurrer to the cause of action for negligence, the California Supreme Court concluded that "an attempt by a third party to divert the proceeds of a check drawn

10

payable to the order of a bank to the benefit of one other than the drawer or drawee suggests a possible misappropriation." (*Id.* at p. 694.) The Court further concluded that the company's "allegations define circumstances sufficiently suspicious that [the bank] should have been alerted to the risk that [the] employee was perpetrating a fraud. By making reasonable inquiries, [the bank] could have discovered the fraudulent scheme and prevented its success." (*Id.* at pp. 694-695.) However, the Court also cautioned that "the duty is narrowly circumscribed: it is activated only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit." (*Id*. at p. 695.)

In *Joffe v. United California Bank* (1983) 141 Cal.App.3d 541 (*Joffe*), a case relied on by Valdes, the court of appeal applied the holding in *Sun 'n Sand* to conclude that a bank owed a limited duty of care to a non-customer. The plaintiffs in *Joffe* had arranged for a check to be issued to an investment company, Continental Finance Systems, for deposit into an escrow trust account at Wells Fargo Bank. The check was made payable to "Continental Finance Systems - Wells Fargo Escrow Trust Account." Unbeknownst to the plaintiffs, Continental Finance Systems instead deposited the check into its own account with Bank of America. The plaintiffs sued Bank of America for negligence, alleging that the bank breached a duty of care by accepting the check for deposit despite the restrictive language on the face of the check. The court of appeal held that the facts alleged were sufficiently suspicious to fall under the *Sun 'n Sand* rule and support a cause of action for negligence. (*Id*. at p. 556.) As the *Joffe* court explained, "[u]nder these circumstances -- a check for a substantial amount, payable to an escrow, or trust, or similar entity at another bank, with inadequate indicia on the face of the check regarding the representative authorized to negotiate the instrument -- we conclude that the risk to the drawer is sufficiently foreseeable to impose a duty on a depositary bank 'not to ignore the danger signals inherent' in an attempted negotiation by a third party." (*Ibid*.)

In this case, however, Valdes's third amended complaint failed to allege facts which, if proven, could support a finding that East West Bank owed her a duty of care.

11

Valdes did not allege, nor could she allege, that she had any contractual relationship with East West Bank. She was never a customer or a depositor of the bank.

Moreover, based on the well-pleaded allegations in the third amended complaint, the circumstances surrounding the deposit of the cashier's checks were not sufficiently suspicious to impose a limited duty of care on East West Bank to make inquiries into the validity of the checks. As alleged by Valdes, Campano was an owner and officer of sham corporations known as "Stargate Development Corporation," for which she used the acronym "SDC," and "Regency Stones International," for which she used the acronym "RSI." At Campano's direction, Valdes purchased a series of cashier's checks with the named payee identified only by initials, such as "SDC" or "RSI," and provided those checks to Campano for investment in certificates of deposit at Wachovia Bank or Wells Fargo Bank. Without Valdes's knowledge or consent, Campano endorsed the cashier's checks in the name of the payees by handwriting the initials, and then deposited the checks made payable to "SDC" into an East West Bank account held in the name of "Stargate Development Corporation," and the checks made payable to "RSI" into an East West Bank account held in the name of "Regency Stones International."[6]

Valdes argues that the cashier's checks were sufficiently suspicious to fall within the limited duty of care recognized in *Sun 'n Sand* and *Joffe* because the names of the payees on the checks did not match the names on the accounts where the checks were deposited. Although it is true that the named payees on the checks were identified only by acronyms and did not include the full names of the account holders, the third amended complaint alleged that Campano used the acronym "SDC" for "Stargate Development Corporation" and the acronym "RSI" for "Regency Stones International" in establishing these corporate entities. While each entity was alleged to be a sham corporation formed

---

[6] Based on the allegations in the third amended complaint, it appears that Campano also directed Valdes to purchase cashier's checks payable to "SBI," but it is unclear from the complaint what Valdes intended those initials to represent or what account at East West Bank was used by Campano to deposit those checks.

12

by Campano to carry out her fraudulent scheme, there was no allegation that Campano lacked the authority to act as a signatory on the accounts that she had opened on behalf of these corporations at East West Bank. There was also no allegation that Campano altered the checks in any manner prior to presenting them for deposit; she did not modify the amount of the check or the name of the payor or payee. The fact that the cashier's checks identified the payee by an acronym rather than by a full name does not, standing alone, amount to a red flag that should have alerted East West Bank to the possibility of fraud.

Valdes also suggests that the volume and amount of the cashier's checks deposited by Campano were sufficient to trigger a duty to monitor or investigate those transactions for illegal activity. Valdes notes that Campano used a similar scheme to defraud other individuals of millions of dollars. However, as the court of appeal noted in *Software Design*, there is "no authority for the proposition that, in the absence of suspicious *instruments*, a bank has a duty to supervise account activity or otherwise track frequent and/or large dollar transactions in deposit accounts." (*Software Design*, *supra*, 49 Cal.App.4th at p. 481; see also *Karen Kane*, *supra*, 67 Cal.App.4th at p. 1198 ["we do not believe that volume or amount of the checks was sufficient to inform [the bank] of the possibility of improper activity"].) Here, each of the cashier's checks that Valdes gave to Campano was issued by Citibank at Valdes's request and expressly identified Valdes as the remitter of the check, not as the payee or intended beneficiary. Each of the checks was regular on its face and was not altered in any way prior to being accepted for deposit by East West Bank. While the checks used acronyms rather than full names to identify the payee, they do not bear any objective indicia of wrongdoing that should have put East West Bank on notice that Valdes or anyone else was a potential victim of fraud.

Valdes's reliance on *Sun 'n Sand* and *Joffe* to support the existence of a duty of care owed by East West Bank is misplaced. In each of those cases, the court recognized a narrowly circumscribed duty of inquiry based on the specific facts alleged. In *Sun 'n Sand*, the checks at issue were sufficiently suspicious because they were made payable to the bank itself, but were accepted for deposit into an individual's personal account at the bank after being altered to increase the amount on each check. (*Sun 'n Sand, supra,* 21

13

Cal.3d at p. 678.) In *Joffe*, the check at issue was made payable to an escrow trust account at a specified bank, but was accepted for deposit into a non-escrow corporate account at a different bank. (*Joffe*, *supra*, 141 Cal.App.3d at p. 548.) In this case, although Valdes intended for the cashier's checks to be used to invest in certificates of deposit at Wachovia Bank or Wells Fargo Bank, neither of those banks was identified anywhere on the checks. The checks did not include any reference to a certificate of deposit account or any restrictive language indicating that the checks should only be accepted for deposit at a designated bank. The facts alleged here thus do not fall within the narrow category of duty set forth in *Sun 'n Sand* and *Joffe*. Because East West Bank did not owe a duty of care to Valdes as a matter of law, the trial court properly sustained the demurrer to the cause of action for negligence without leave to amend.

### III. Aiding and Abetting a Breach of Fiduciary Duty

Valdes also contends that the trial court abused its discretion in sustaining East West Bank's demurer to the third amended complaint without leave to amend because she alleged sufficient facts to state a new cause of action for aiding and abetting a breach of fiduciary duty. Although Valdes did not plead this cause of action in her third amended complaint, she claims that the factual allegations set forth in the complaint, if proven, are sufficient to support a finding of liability against East West Bank under this legal theory. We conclude, however, that the trial court properly sustained the demurrer without leave to amend because the third amended complaint fails to allege facts sufficient to establish the knowledge element of an aiding and abetting cause of action.

In support of her argument that East West Bank may be subject to liability under an aiding and abetting theory, Valdes primarily relies on the decision in *Casey*, *supra*, 127 Cal.App.4th 1138. In *Casey*, a trustee of a bankrupt corporation filed suit against three banks, alleging the banks aided and abetted certain fiduciaries of the corporation in a money laundering scheme designed to divest the corporation of its investor funds. In reviewing the sufficiency of the complaint against a demurrer, the court of appeal noted that "'''[l]iability may . . . be imposed on one who aids and abets the commission of an

14

intentional tort if the person . . . knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act. . . .""" (*Id*. at p. 1144.) However, "liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." (*Id*. at p. 1145.) In light of the settled legal principles limiting a bank's duty of care to non-depositors, "a claim against a bank for aiding and abetting a customer's wrongdoing depends on a strict application of the pleading requirement for the knowledge element of the aiding and abetting claim. In other words, on demurrer, a court must carefully scrutinize whether the plaintiff has alleged the bank had actual knowledge of the underlying wrong it purportedly aided and abetted." (*Id*. at p. 1152.)

Applying that strict pleading standard, the court of appeal in *Casey* concluded that, while the plaintiff's complaint provided "ample details of the banks' improper *conduct* in their business dealings with the . . . [f]iduciaries, [it] fail[ed] to establish that the banks had actual knowledge of the primary violation in which they purportedly participated." (*Casey*, *supra*, 127 Cal.App.4th at p. 1148.) The court noted that the complaint contained no allegation that the banks knew the fiduciaries were misappropriating funds from the corporation, or that the money deposited by the fiduciaries into sham business accounts belonged to the corporation. (*Id*. at p. 1152.) The "general allegation the banks knew the . . . [f]iduciaries were involved in 'wrongful or illegal conduct' [did] not constitute sufficient pleading that the banks had actual knowledge the . . . [f]iduciaries were *misappropriating funds* from [the corporation]." (*Ibid*.) Because the complaint failed to allege the banks' actual knowledge of the primary wrongdoing, the court of appeal held that the trial court properly sustained the demurrer to the cause of action for aiding and abetting a breach of fiduciary duty. (*Id*. at p. 1153.) The court also noted, however, that the knowledge element of the cause of action "was not specifically raised by the demurrer or addressed by the parties in their arguments before the trial court," and thus, it was unclear whether there was a reasonable probability that the defect could be cured by amendment. (*Id*. at p. 1154.) On that basis, the court decided that the plaintiff should be

given an opportunity to amend the complaint "to allege, if he can, sufficient facts to establish the knowledge element of the aiding and abetting cause of action." (*Ibid.*)

In this case, Valdes asserts that the facts alleged in the third amended complaint are sufficient to state a cause of action against East West Bank for aiding and abetting a breach of fiduciary duty. However, when the allegations in the complaint are read as a whole and in context, they fail to show that East West Bank had any actual knowledge of the underlying wrong that it purportedly aided and abetted. With respect to East West Bank's knowledge of Campano's wrongful conduct toward Valdes, the third amended complaint alleged: "Plaintiffs are further informed and believe and thereon allege that the discongruity between payee and account holder could not have been accomplished without inside help from [East West Bank]. . . . It is highly impossible that multiple deposits such as those could be accomplished without money or other consideration being paid by [Campano] to one or more employees at [East West Bank], whose identities are presently unknown to plaintiffs. . . . In light of the huge amount of money in multiple converted cashier's checks deposited by [Campano] to the shell accounts at [East West Bank], [East West Bank] either recklessly or intentionally aided and abetted [Campano] in converting these millions of dollars [in] stolen money to her own use. It is not reasonably probable that so much money and so many checks with discongruity between payee and account holder could be accomplished without inside assistance from one or more employees at [East West Bank]." In the cause of action for fraud, the complaint similarly alleged that East West Bank's practice of accepting deposits from Campano where the named payee was not the account holder "would not have prospered without active participation of East West [Bank] employees in supervisory or managerial capacities who were aware of [Campano's] fraudulent practices."

These conclusory allegations do not satisfy the strict pleading requirement for the actual knowledge element of an aiding and abetting cause of action. Rather, they merely reflect that, based on the volume and amount of checks that Campano deposited into East West Bank accounts where the named payee did not match the account holder, Valdes believes that Campano must have had "inside help" from one or more employees of East

16

West Bank. However, the third amended complaint does not contain any allegation that any East West Bank employee had actual knowledge that Campano was embezzling funds from Valdes when she deposited the cashier's checks remitted by Valdes into the accounts held at East West Bank. Instead, the complaint alleges that Campano would not have "prospered" in carrying out her scheme unless she had been assisted by East West Bank employees "who were aware of [her] fraudulent practices." As the court of appeal recognized in *Casey*, a bank's "alleged knowledge of [a customer's] suspicious account activities – even money laundering – *without more*, does not give rise to tort liability for the bank[ ]." (*Casey*, *supra*, 127 Cal.App.4th at p. 1151.) The vague allegation that East West Bank employees must have been "aware of [Campano's] fraudulent practices" is insufficient to show that the employees actually knew that Campano was breaching a fiduciary duty owed to Valdes. (*Id*. at p. 1153 [allegation that "the banks knew the . . . [f]iduciaries were 'involved in a criminal and wrongful enterprise' is too generic to satisfy the requirement of actual knowledge of a specific primary violation"].) Because the third amended complaint fails to adequately plead that East West Bank had actual knowledge of the underlying wrong perpetrated by Campano, it does not support a cause of action against East West Bank for aiding and abetting a breach of a fiduciary duty.

Although Valdes contends on appeal that the third amended complaint sets forth sufficient facts to state an aiding and abetting cause of action against East West Bank, she also asserts that she should be given an opportunity to plead her factual allegations with greater specificity. However, Valdes fails to identify what additional facts, if any, she could allege to establish the actual knowledge element of an aiding and abetting cause of action, or how she could further amend her existing factual allegations to show that East West Bank actually knew that Campano was breaching a fiduciary duty owed to Valdes. Where the trial court sustains a demurrer without leave to amend, "the burden falls upon the plaintiff to show what facts he or she could plead to cure the existing defects in the complaint." (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 734; see also *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44 ["burden of showing that a reasonable possibility exists that amendment can cure the defects remains

17

with the plaintiff"].)  Because Valdes has effectively received three opportunities to amend her complaint against East West Bank and has not demonstrated on appeal how she could further amend the complaint to cure the existing defects, the trial court did not abuse its discretion in sustaining East West Bank's demurrer without leave to amend.[7]

## DISPOSITION

The judgment is affirmed.  East West Bank shall recover its costs on appeal.


ZELON, J.


We concur:


PERLUSS, P. J.


BECKLOFF, J.[*]

---

[7]     In light of this conclusion, we need not address East West Bank's remaining arguments as to why the third amended complaint failed to state a cause of action against East West Bank as a matter of law.

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.