Filed 6/6/23 Sakhai v. Tower Select Insurance CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MORIS SAKHAI et al., | B313051 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. Nos. 19STCV03806, BC531321) |
| v. | |
| TOWER SELECT INSURANCE et al., | |
| Defendants and Respondents. | |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, Lia R. Martin, Judge. Affirmed. The appeal by California Capital Venture, Inc. is dismissed.

Moris Sakhai, in pro. per., Nazyar Azadegan, in pro. per.; George Omoko and Law Office of George Omoko for Plaintiffs and Appellants.

No appearance for Plaintiff and Appellant California

Capital Venture, Inc.

Gordon Rees Scully Mansukhani, Michelle Bernard, Matthew G. Kleiner for Defendant and Respondent Nationwide Insurance Company.

Hinshaw & Culbertson, Robert J. Romero, Edward F. Donohue and Joseph V. Diestel for Defendant and Respondent Northfield Insurance Company.

---

This is the third appeal arising from a 2018 settlement agreement resolving a dispute between appellants Moris Sakhai, Nazyar Azadegan, and California Capital Venture, Inc. (collectively, appellants) and Peyman Balakhane, Pejman Balakhane, and L.A. Fashion Hub, Inc. (collectively, the Balakhanes).[1]  Under the settlement agreement, entered orally on the record before the trial court, appellants agreed to pay $750,000 to the Balakhanes.  Of that amount, the parties agreed that $400,000 would be paid by appellants' insurers, respondents Nationwide Insurance Company (Nationwide) and Northfield Insurance Company (Northfield), after appellants executed a release of future claims against the insurers.

When appellants failed to execute the insurance policy release as agreed, the trial court entered orders enforcing the portion of the agreement releasing respondents from liability once they paid their portion of the settlement.  Appellants and respondents subsequently paid the settlement amount in full. Following an initial appeal by the Balakhanes (*Balakhane v. Sakhai* (Aug. 27, 2020, No. B294837) (nonpub. opn.) (*Balakhane I*)), appellants sought to vacate the court's orders releasing

---

[1] The Balakhanes are not parties to this appeal.

respondents from liability. They argued that the orders were void because respondents were not parties to the litigation and therefore the court lacked jurisdiction over them at the time of the settlement. The trial court denied the motion and we affirmed that denial in the second appeal, *Balakhane v. Sakhai* (March 23, 2022, No. B307271) (nonpub. opn.) (*Balakhane II*).

Appellants filed the instant lawsuit against their former counsel and several insurance companies, including respondents. They alleged that the attorneys conspired with respondents to force appellants to accept the settlement of the underlying matter, giving rise to claims of malpractice by counsel and aiding and abetting that malpractice by the insurers. Appellants also alleged breaches of contract by the insurers.

In this appeal, appellants challenge three orders by the trial court: an order sustaining the demurrer without leave to amend as to all claims against Nationwide and all but one claim against Northfield, an order granting the motion for judgment on the pleadings by Northfield as to the remaining cause of action against it, and an order granting Nationwide's motion to strike the three aiding and abetting claims under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[2] Appellants argue that they could amend their complaint to state that the settlement release was void under a different theory. They also contend that they adequately alleged their claims against respondents and that the anti-SLAPP motion should have been

_____

[2] SLAPP is an acronym for "strategic lawsuits against public participation." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139.) All further statutory references are to the Code of Civil Procedure unless stated otherwise.

denied because legal malpractice is not protected under the statute. We find no merit to appellants' contentions and affirm the orders of the trial court.

## FACTUAL AND PROCEDURAL HISTORY
### I.     Prior Proceedings
#### A.     *Balakhane Action and Settlement Agreement*

We summarize the underlying facts as detailed in our opinion in *Balakhane II*. The Balakhanes filed a complaint against appellants in December 2013, alleging breach of contract, fraud, and other claims arising out of a failed partnership between the parties. This matter was consolidated with an unlawful detainer complaint filed by appellants against the Balakhanes (collectively, the Balakhane action).

The parties participated in a mid-trial settlement conference on February 2, 2018. Following the conference, with all parties and their counsel present, the court announced that the parties had reached a settlement. Counsel for appellants recited the terms of the agreement on the record, stating that "[t]he parties have agreed upon a complete settlement of all claims between and among them, including all of the cases consolidated before this Court." He further stated that appellants agreed to "pay a total settlement amount to [the Balakhanes] in the amount of $750,000," including a payment of $400,000 "by a group of insurance carriers that will be described separately by the representative, who is here today." Counsel for both parties agreed that the settlement agreement was "fully enforceable under" section 664.6.[3] Appellants' counsel also

---

[3] Section 664.6, subdivision (a) provides: "If parties to

4

explained the additional terms that respondents would pay $400,000 once appellants signed a "complete policy release," after which appellants would pay the remaining $350,000.

Counsel for respondents Nationwide and Northfield was also present at the February 2, 2018 hearing. She informed the court that "[i]ncluded as part of the settlement agreement" was the provision that the insurance companies' contribution was contingent upon appellants signing a full policy release releasing respondents "of all obligations under the policies and all possible present and future extra-contractual liabilities in connection with the claims involved in this complaint." The court confirmed with all parties personally that they had heard and agreed to these terms "as relayed by both the attorneys as well as the individual from the insurance company." Counsel for respondents also stated that she accepted the terms on behalf of Nationwide and Northfield. The court accepted the settlement agreement and stated that it "will retain jurisdiction under 664.6 to settle the matter."

**B.** *Enforcement of Settlement*

When appellants failed to execute the insurance policy release, the Balakhanes moved to enforce the settlement agreement. Respondents filed a notice of special appearance, including a memorandum of points and authorities regarding the

---

pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

Balakhanes' motion to enforce the settlement agreement. Respondents noted that they had agreed to indemnify appellants in the amount of $400,000 in settlement of the action on the condition that appellants executed a policy release related to the claims at issue. They argued that the court could enforce the agreement under section 664.6, including the requirement that appellants release respondents from liability.

Appellants did not raise any objection to respondents' filing or to the appearance by respondents' counsel at the March 2018 hearing on the motion to enforce the settlement. The court found that the settlement was entered "in open court, and pursuant to CCP § 664.6," and included the agreement by appellants "to execute a Full Policy Release relieving their insurance company of liability" and to pay a total settlement amount to the Balakhanes of $750,000, with the first $400,000 to be paid "on the condition that the insurance release was fully executed" by the payment date. The court granted the motion in part, to "enforce that part of the agreement granting the carrier a full policy release on the condition that [respondents] forward the agreed upon proceeds forthwith to [the Balakhanes]."

Nationwide subsequently paid its contribution pursuant to the settlement agreement. Accordingly, on March 14, 2018, the court entered the following order: "Pursuant to the terms of the oral settlement agreement set forth before this Court on February 2, 2018 by and between [the Balakhanes] on the one hand, and [appellants] on the other hand, through their respective counsel, and the agreement having been orally agreed to by the parties, and further, that Nationwide . . . has tendered its agreed upon proceeds to [the Balakhanes] in accordance with the terms of the . . . settlement agreement," the court ordered

6

that "Nationwide . . . is granted a full policy release, releasing Nationwide . . . of all obligations under its policies and all possible present and future extra-contractual liabilities in connection with the claims involved in this complaint." Northfield paid its portion of the settlement by early April 2018.[4]

In June 2018, appellants filed a motion for enforcement of the settlement agreement pursuant to section 664.6. They claimed that the Balakhanes materially breached the settlement agreement. The court denied this motion and ordered appellants to pay the remaining $350,000 owed under the settlement agreement. Appellants paid the $350,000 the same day.

### C. *First Appeal*

In August 2018, the Balakhanes filed a motion for attorney fees and costs incurred in seeking to enforce the settlement agreement. In their opposition, appellants again asserted that the court agreed to retain jurisdiction over the parties pursuant to section 664.6 to enforce the settlement agreement and that appellants had paid the full amount owed pursuant to the agreement. The court denied the motion for attorney fees and costs and the Balakhanes appealed. In *Balakhane I*, we affirmed the trial court's denial of attorney fees. We also noted that in their respondents' brief on appeal, appellants argued that the settlement agreement was void for noncompliance with section 664.6. We refused to consider this claim, as appellants had not raised it below and had not appealed from the judgment.

### D. *Motion to Vacate and Second Appeal*

---

[4] Unlike Nationwide, Northfield did not obtain a separate order from the court granting a policy release.

In February 2020, appellants filed a motion to vacate the trial court's "void orders" releasing respondents from liability. They argued that respondents were not parties to the lawsuit and the court thus had "no jurisdictional basis" to order a release of their liabilities in connection with the claims at issue. They also argued that the court lacked jurisdiction to enter the order granting the policy release because no party had requested that the court retain jurisdiction under section 664.6 to enforce the settlement agreement.

The court denied the motion, rejecting appellants' argument that the judgment was void and finding that the agreement as orally entered on the record on February 2, 2018 established "that the Court's jurisdiction to enforce the settlement agreement was properly preserved." The court noted that counsel for both parties "expressly agreed that this open-court settlement was being brought pursuant to, and was 'fully enforceable' under," section 664.6. The court further cited the personal acknowledgment by the parties on the record on February 2, 2018 that they had heard, understood, and agreed to the terms of the agreement, which included the payments and the insurance policy release, followed by the court's express retention of jurisdiction under section 664.6.

Appellants appealed. In *Balakhane II*, we concluded that the trial court's orders releasing respondents from liability were not void and therefore the court did not err in denying appellants' request to vacate them. Specifically, we found that the trial court had subject matter jurisdiction over the settlement, including jurisdiction under section 664.6 to enforce the terms of the settlement agreement. We also rejected appellants' assertion that the court lacked personal jurisdiction over respondents

8

because they were not parties to the litigation. To the contrary, we found that the evidence showed that respondents made a general appearance in the Balakhane action and were therefore subject to the court's personal jurisdiction for the purpose of enforcing the settlement agreement. We also concluded that appellants had forfeited several other newly raised challenges to the settlement agreement.

## II. Appellants' Lawsuit

### A. *Pleadings*

Appellants filed a complaint in February 2019 alleging breach of contract and bad faith against respondents and several other insurance companies,[5] as well as their former counsel, the Law Offices of Samini Scheinberg, P.C., Theodore Spanos, and Bobby Samini (collectively, the attorney defendants). Appellants filed their first amended complaint (FAC)—the pleading at issue here—in February 2020. After appellants' claims arose out of the purported mishandling of the Balakhane action and settlement by the attorney defendants, including the contention that the attorney defendants forced appellants to settle the case, with assistance by the insurance companies.

The FAC alleged fourteen causes of action, including four claims for breach of fiduciary duties, fraud, and related claims against the attorney defendants. As relevant here, appellants alleged the following claims against respondents: the second, fourth, and sixth causes of action for aiding and abetting breach of fiduciary duties, dual representation of adverse interests, and

---

[5] We omit discussion of the claims against the insurance companies other than respondents, as they are not relevant to this appeal.

fraud (non-disclosure or intentional concealment), respectively; the eighth and ninth causes of action for breach of insurance contract against Nationwide and Northfield, respectively; the eleventh cause of action for bad faith breach of implied covenant of good faith and fair dealing; and the fourteenth cause of action for declaratory relief.

With respect to their claims against respondents, appellants alleged that they were insured during the relevant time periods under commercial general liability policies issued by respondents. As a result, appellants alleged that respondents had a duty to defend appellants in the Balakhane action and therefore appointed the attorney defendants. Appellants also generally alleged that the attorney defendants and respondents "knew the other's(s') conduct constituted breaches of duty and gave substantial assistance or encouragement to the other(s) to so act."

Appellants alleged three malpractice claims against the attorney defendants mirroring the aiding and abetting claims against respondents. In their claim for breach of fiduciary duty against the attorney defendants, appellants alleged that the attorney defendants breached their fiduciary duties to appellants by "pursuing strategies that were contrary to [appellants'] interests" including "abandon[ing] all the damages (in excess of $1,000,000) that had been established in favor of Sakhai," without appellants' authorization. Appellants also alleged that "Spanos and/or Samini lied to the Representatives of Nationwide and Northfield that Sakhai on his own had reached a settlement of $750,000 . . . and then proceeded to force [appellants] to accept the settlement." Appellants' second cause of action alleged that respondents aided and abetted the attorney defendants in such

10

breaches.  Appellants alleged that respondents "knew about the wrongdoings" by the attorney defendants, and that counsel for respondents was "within hearing distance" of discussions between appellants and Spanos during the settlement conference and therefore respondents should have known "from Sakhai's strenuous opposition to the proposed settlement" that appellants had not agreed to it.

In their claim against the attorney defendants for "dual representation of adverse interests," appellants alleged that the attorney defendants were simultaneously representing appellants in the Balakhane action and "the interests of the insurers paying them," and that those interests "came into actual conflict" in the litigation.  In the fourth cause of action for aiding and abetting dual representation, appellants alleged that respondents knew about the attorney defendants' wrongdoings and "gave substantial assistance or encouragement."  Appellants also alleged that respondents "specifically knew or reasonably should have known" of the attorney defendants' breaches of fiduciary duties, but "negligently failed" to take "appropriate action to avoid the harm" to appellants.

In the last malpractice claim alleging fraud and deceit, appellants claimed that the attorney defendants were "unable to effectively manage the ethical duties of loyalty and confidence necessary to balance" appellants' interests in the Balakhane action with the interests of respondents, who were "paying their attorney's fee and costs."  The attorney defendants "threatened" appellants that they had no choice but to accept the settlement, and falsely told counsel for respondents that appellants had "personally reached" that settlement.  Appellants also alleged that counsel for respondents refused to answer appellants'

11

request "to explain the Nationwide policy benefits being impacted, and failed to disclose to [appellants] that Northfield was going to be involved in contributing any portion of the settlement." In their sixth cause of action for aiding and abetting fraud, appellants repeated the general allegations that respondents knew of the wrongdoings, gave substantial assistance to the attorney defendants, and negligently failed to take action to avoid the alleged harm to appellants.

In their eighth and ninth causes of action for breach of contract, appellants alleged that respondents breached the insurance agreements by "failing in their duties to defend and indemnify [appellants] for covered losses." In their eleventh cause of action for breach of the implied covenant of good faith and fair dealing, appellants alleged that respondents breached the insurance agreements by "failing in their duties to defend and indemnify [appellants] for covered losses, and/or denying coverage."

In the fourteenth cause of action, appellants sought "declaratory relief to nullify void orders of 03/05/2018 and 03/14/2018 releasing Nationwide and Northfield." They alleged that respondents were not named parties in the Balakhane action, that "there was no record of any party agreeing for the Court to retain jurisdiction [under section 664.6] to enforce the settlement," and therefore that "any order(s) releasing [respondents] from claims asserted in this lawsuit is/are void." Appellants sought a declaration "that Nationwide and Northfield are proper parties in this lawsuit notwithstanding the void Orders releasing them from liabilities."

**B.    *Demurrer***

12

In April 2020, Nationwide demurred to the claims alleged against it in the FAC—the second, fourth, sixth, eighth, eleventh, and fourteenth causes of action. Northfield filed a joinder to the demurrer as to the second, fourth, sixth, eleventh, and fourteenth claims, as those were alleged against both insurers (the eighth cause of action for breach of contract was alleged only against Nationwide). Northfield did not file a separate demurrer as to the breach of contract claim (the ninth cause of action) alleged against it.

Nationwide argued that the settlement agreement was valid and therefore that appellants had released all claims against it. Nationwide also argued that any alleged professional negligence by the attorney defendants could not be imputed to an insurer, such as Nationwide, as a matter of law. Additionally, Nationwide contended that appellants' claim for declaratory relief failed because the court lacked jurisdiction to vacate any orders from the Balakhane action. Finally, Nationwide argued that further amendment would be futile.

Appellants argued in their opposition that the settlement and release were void because respondents participated as non-parties. They also noted the then-pending appeal on the same issue (*Balakhane II*) and argued that the trial court could declare the prior court's orders void. Appellants also argued that they had adequately alleged their aiding and abetting claims against respondents under an "independent joint liability theory," and thus that respondents' argument that the attorney defendants' misconduct could not be imputed to them was irrelevant. They alleged that the FAC set forth respondents' own conduct in "assisting and encouraging" the attorney defendants to engage in malpractice.

The court issued an order on March 4, 2021, sustaining the demurrer without leave to amend as to all causes of action against Nationwide, and all except the ninth cause of action against Northfield. It noted that the issue of the validity of the settlement and releases was currently pending on appeal (in *Balakhane II*), but that it would exercise its discretion to rule on the demurrer rather than stay it. The court found that appellants "do not dispute that they entered into a settlement agreement that included a policy release in favor of [respondents] in its terms. And . . . [appellants] cite no authority that supports the proposition that the parties to the litigation over whom the [court in the Balakhane action] unquestionably had jurisdiction could not include terms in their settlement agreement that contemplated a full release of insurers once certain conditions were met." Turning to the individual causes of action, the court sustained the demurrer without leave to amend as to the second, fourth, and sixth claims for aiding and abetting, finding that appellants conceded that they were "represented by independent counsel retained by [appellants] pursuant to Cal. Civ. Code 2860 rather than by panel counsel appointed by insurers."

The court also sustained the demurrer without leave to amend as to the eighth cause of action for breach of contract against Nationwide and the eleventh cause of action for breach of the implied covenant of good faith and fair dealing against both respondents.[6] The court found that the claims "arise out of the settlement agreement in [the Balakhane action], which no court

---

[6] The court did not reach the ninth cause of action for breach of contract against Northfield, finding that Northfield had not demurred to that claim.

14

has yet determined to be void." Moreover, the court found that the terms of the settlement "include that the policies and all of their claims have been released" against respondents. Finally, the court sustained the demurrer without leave to amend as to the fourteenth cause of action for declaratory relief, explaining that appellants "are asking this Court to nullify orders of another court of equal jurisdiction. This court lacks jurisdiction to do so. There is no basis for this court to find the orders void on their face."

The court dismissed Nationwide with prejudice from the FAC on March 4, 2021.

### C.    *Motion for Judgment on the Pleadings*

Northfield filed a motion for judgment on the pleadings as to the remaining ninth cause of action against it on April 1, 2021. Northfield argued that appellants had released all claims against it and that such release was effective without an additional court order releasing it from liability. In opposition, appellants argued that Northfield had refused to defend appellants in the Balakhane action and did not obtain an order releasing it from liabilities. Appellants also repeated their previous argument that the court lacked jurisdiction and the settlement was void.

The court issued its order on April 29, 2021, granting the motion on the same grounds as the demurrer. The court dismissed Northfield with prejudice from the FAC the same day.

### D.    *Anti-SLAPP Motion*

In May 2020, Nationwide filed a motion to strike pursuant to section 425.16; to which Northfield filed a joinder. Nationwide sought to strike the aiding and abetting claims (the second, fourth, and sixth causes of action), on the basis of the litigation privilege under Civil Code section 47. It argued that these claims

15

arose from alleged communications between the attorney defendants and respondents in furtherance of litigating and settling the Balakhane action and therefore were protected activity under the anti-SLAPP statute. It also argued that appellants could not show a probability of success on the merits of their claims because defense counsel's conduct could not be imputed to the insurers, and because the claims had been released.

In opposition, appellants acknowledged that the attorney defendants acted as "independent counsel aka *Cumis*[7] counsel" when representing appellants in the Balakhane action. However, they argued that the litigation privilege did not apply because attorney malpractice, on which the aiding and abetting claims were based, is not protected activity. They also contended that they could show a probability of success on their claims for the same reasons set forth in their opposition to the demurrer.

After a hearing on March 5, 2021, the court adopted its tentative ruling granting Nationwide's motion to strike. However, the court denied Northfield's request to join the motion to strike, finding that Northfield's notice of joinder did "not support a request for relief." As for the merits of the motion, the court found that the allegations against Nationwide in the aiding and abetting claims were within the scope of the anti-SLAPP statute, as those allegations "relate to communications regarding the litigation and settlement."[8]

---

[7] *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 (*Cumis*).

[8] The court also sustained the majority of Nationwide's

16

Turning to the probability of prevailing on the merits, the court rejected appellants' argument that the litigation privilege did not apply because the settlement and orders enforcing the settlement were void. Moreover, the court reasoned, "even if they were void, the communications by Nationwide were still made in the context of the litigation and settlement. [Appellants have] cited to no authority that a subsequent finding that a court order was void negates the litigation privilege." The court further found that Nationwide was not liable for the actions of appellants' independent counsel. As such, the court concluded that appellants failed to establish a probability of prevailing on the merits of their claims and granted the motion to strike the second, fourth, and sixth causes of action against Nationwide. The court also found that Nationwide was entitled to costs and attorney fees. The court subsequently granted Nationwide's motion for $12,833 in fees and costs incurred in connection with the anti-SLAPP motion.

Appellants timely appealed from the judgment following the court's March 4, 2021 order sustaining the demurrer and dismissing Nationwide, and the April 29, 2021 order granting Northfield's motion for judgment on the pleadings and dismissing Northfield. Appellants also appealed from the March 5, 2021 order granting Nationwide's motion to strike.[9]

---

objections to appellants' evidence. This evidence consisted of paragraphs from the declaration submitted by appellants' counsel reciting certain facts based on his "review of the files and documents related to the" Balakhane action. Appellants do not challenge these rulings on appeal.

[9] In December 2022, after appellate briefing had concluded, we granted the motion of attorney George Omoko to be

17

## DISCUSSION

Appellants contend the trial court erred in sustaining Nationwide's demurrer to all causes of action against it, as well as all but one cause of action against Northfield. As to all of the claims, appellants do not contend the court erred in finding that the claims were released under the settlement agreement. Instead, they argue the court failed to consider whether they could amend their complaint, specifically to assert a new jurisdictional claim that they contend would cure any defects. Additionally, they argue that the aiding and abetting claims sufficiently alleged that respondents committed independent torts in support of the purported legal malpractice by the attorney defendants. Lastly, they contend that they adequately alleged a right to declaratory relief.

---

relieved as counsel for all three appellants. In February 2023, we granted the request of Sakhai and Azadegan to continue oral argument so that they could retain new counsel. No counsel has filed an appearance for appellants since that time and Sakhai appeared in propria persona at oral argument in May 2023. While Sakhai and Azadegan may represent themselves on appeal, corporate appellant California Capital Venture, Inc. may not proceed without counsel. (See, e.g., *CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1145 ["[A] corporation, unlike a natural person, cannot represent itself before courts of record in propria persona, nor can it represent itself through a corporate officer, director or other employee who is not an attorney. It must be represented by licensed counsel in proceedings before courts of record."].) We therefore dismiss the appeal as to California Capital Venture, Inc.

Appellants also challenge the trial court's order granting Northfield's motion for judgment on the pleadings. They again argue that the trial court erred by failing to consider whether they could amend that claim.

Finally, appellants contend the court should have denied respondents' anti-SLAPP motion regarding the second, fourth, and sixth causes of action alleging aiding and abetting. They argue that the underlying legal malpractice by the attorney defendants is not protected conduct under the anti-SLAPP statute, and furthermore that they have established a probability of prevailing on their claims.

We conclude that appellants have failed to establish any error by the trial court. We therefore affirm the judgment dismissing Nationwide and Northfield from the FAC, as well as the order granting the anti-SLAPP motion.

## I. Demurrer
### A. *Legal Standards*

A demurrer tests the legal sufficiency of factual allegations in a complaint. (*Title Ins. Co. v. Comerica Bank–California* (1994) 27 Cal.App.4th 800, 807.) We review de novo the dismissal of a civil action after a demurrer is sustained without leave to amend. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 (*Cantu*).) In doing so, "we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'" (*Ibid.*) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Ibid.*)

On appeal, a plaintiff bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) To establish that a cause of action has been adequately pled, a plaintiff must demonstrate he or she has alleged "facts sufficient to establish every element of that cause of action. [Citation.]" (*Cantu, supra*, 4 Cal.App.4th at pp. 879–880.) If the complaint fails to plead any essential element of a particular cause of action, this court should affirm the sustaining of a demurrer. (*Ibid.*)

We review an order denying leave to amend for an abuse of discretion. "'Generally, it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment. . . . However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.'" (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; see also, e.g., *Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1227 [liberality in permitting a party to amend a pleading is the rule if a fair opportunity to correct the defect has not already been given and the pleading's deficiency can be easily corrected.])

**B.** *Analysis*

In their opposition to the demurrer below, appellants argued that the trial court in the Balakhane action lacked jurisdiction over the settlement agreement and over respondents as non-parties, and therefore that the court's orders enforcing the agreement—most pertinently the release of claims against respondents—were void. The trial court rejected that argument

20

and sustained the demurrer on the basis that appellants had released all claims against respondents arising out of the Balakhane action as part of the valid settlement agreement.

We rejected this same voidness argument raised by appellants in *Balakhane II*. As multiple courts have now found, the settlement agreement was valid and enforceable; in fact, its payment terms were complied with by all parties apart from appellants' refusal to sign the policy release. The claims asserted against respondents in this lawsuit arose directly out of the Balakhane action. Those claims were therefore covered under the liability release set forth in the settlement agreement. Indeed, appellants do not contend otherwise. Thus, because appellants released the claims asserted in this action pursuant to the terms of the settlement agreement, the FAC fails to state a claim upon which relief could be granted and the demurrer was properly sustained in its entirety.

Appellants now contend that the trial court abused its discretion in denying leave to amend because they could amend their complaint with a new claim—that the settlement agreement and accompanying insurance releases were void for lack of personal jurisdiction pursuant to section 583.210. Section 583.210, subdivision (a) provides: "The summons and complaint shall be served upon a defendant within three years after the action is commenced against the defendant. For the purpose of this subdivision, an action is commenced at the time the complaint is filed."

Appellants argue that this statute applies to respondents, and because respondents were not served with the summons and complaint and they did not make a general appearance within three years after the Balakhane action commenced in 2013, the

matter was subject to mandatory dismissal.  Moreover, because the court did not dismiss the action, the subsequent settlement agreement was void for lack of jurisdiction.  However, as respondents point out, section 583.210 on its face applies only to service on *defendants* in an action, whereas here, it is undisputed that respondents were not parties to the Balakhane action.  Appellants rely on cases applying section 583.210 to parties  (see *Dale v. ITT Life Ins. Corp.* (1989) 207 Cal.App.3d 495, 503 [dismissing claim where defendant was not served within three years]; *Semole v. Sansoucie* (1972) 28 Cal.App.3d 714, 722-723 [same]).  They cite no authority relevant to nonparties.  Nor do they provide any support for their suggestion that respondents "became defendants" when they made a general appearance at the time of the settlement in February 2018.[10]

To the contrary, the record reflects that respondents, through counsel, appeared in February 2018 in order to participate in the settlement as insurers to appellants, not as parties to the Balakhane action.  They then paid the agreed-upon settlement amount to the Balakhanes in compliance with that agreement.  Appellants' contention, four years later, that the trial court should have dismissed the Balakhane action because the Balakhanes did not serve respondents with a summons and complaint within three years of the commencement of that action in 2013 is nonsensical.

_____

[10] Notably, this claim is directly contrary to every other jurisdictional challenge appellants have made throughout this litigation, in which appellants repeatedly argued that the settlement was void because respondents were *not* parties.

22

We also note that appellants acknowledge that they did not make this argument before the trial court when opposing Nationwide's demurrer.[11]  Thus, their contention that the trial court erred by failing to consider it is meritless.  We conclude that the trial court did not abuse its discretion in denying leave to amend the FAC.

Appellants challenge the demurrer ruling as to the aiding and abetting claims (the second, fourth, and sixth causes of action) on an additional basis.  They argue that the FAC alleged "ratification and other acts by Nationwide endorsing or approving" the actions of the attorney defendants, and that those allegations were sufficient to establish claims for aiding and abetting by respondents.

The trial court found, and appellants concede, that they were represented in the Balakhane action by independent counsel retained pursuant to Civil Code section 2860, rather than by counsel appointed and controlled by respondents.  As codified in Civil Code section 2680, "[i]f the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured."  (Civil Code, § 2680, subd. (a); see also *Kroll & Tract v. Paris & Paris* (1999) 72 Cal.App.4th 1537, 1543 ["The *Cumis* doctrine requires 'complete independence of counsel,' who represents 'solely the insured.'"].)  As such, respondents cannot be held liable for the

_____

[11] Appellants previously attempted to raise this argument during oral argument in *Balakhane II*.  We found it was untimely and declined to consider it.

23

purported misconduct by the attorney defendants in their representation of appellants during the Balakhane action.  (See, e.g., *Merritt v. Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 880 ["independent counsel retained to conduct litigation in the courts act in the capacity of independent contractors, responsible for the results of their conduct and not subject to the control and direction of their employer over the details and manner of their performance"]; accord, *Channel Lumber Co. v. Porter Simon* (2000) 78 Cal.App.4th 1222, 1229-1230; *Lynn v. Superior Court* (1986) 180 Cal.App.3d 346, 349.)

Appellants do not dispute these circumstances.  Rather, they contend that they alleged independent tortious conduct by respondents that amounted to aiding and abetting the attorney defendants' breach of fiduciary duties (second cause of action), dual representation of adverse interests (fourth cause of action), and fraud (sixth cause of action).  The allegations of the FAC do not support these contentions.

"A defendant is liable for aiding and abetting another in the commission of an intentional tort, including a breach of fiduciary duty, if the defendant "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act.""  (*Nasrawi v. Buck Consultants LLC* (2014) 231 Cal.App.4th 328, 343 (*Nasrawi*), quoting *Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1144 (*Casey*).)  "The elements of a claim for aiding and abetting a breach of fiduciary duty are:  (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff."

24

(*Nasrawi, supra*, 231 Cal.App.4th at p. 343, citing *American Master Lease LLC v. Idanta Partners, Ltd*. (2014) 225 Cal.App.4th 1451, 1478 (*American Master Lease*).) Liability for aiding and abetting "depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." (*Casey, supra*, 127 Cal.App.4th at p. 1145.) The aider and abettor must make "'"a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act."'" (*American Master Lease, supra*, 225 Cal.App.4th at p. 1477.)

Reading the allegations of the complaint as a whole and in context, they fail to show that respondents had any actual knowledge of the underlying wrongs that they purportedly aided and abetted. Appellants include the conclusory allegation that respondents "knew about the wrongdoings" by the attorney defendants and "gave substantial assistance or encouragement to the other(s) to so act." But they fail to plead any facts to support the assertion that respondents had actual knowledge of the tortious conduct by the attorney defendants. To the contrary, the FAC alleged that the attorney defendants lied to respondents, telling them that appellants had agreed to the settlement. The FAC also alleged that respondents' counsel was "within hearing distance" of one of the attorney defendants "threatening" appellants during the settlement conference and therefore respondents should have known "from Sakhai's strenuous opposition to the proposed settlement" that appellants had not agreed to it. These allegations fail to state sufficient facts to establish that respondents had actual knowledge of the purported misconduct by the attorney defendants. (See *Casey, supra*, 127 Cal.App.4th at p. 1154; see also *Schulz v. Neovi Data Corp.* (2007)

25

152 Cal.App.4th 86, 97 [rejecting as conclusory allegations that the defendant acting with the "knowing intent to aid and abet"].)

Appellants' three aiding and abetting claims are similarly bereft of any facts supporting their conclusory claim that respondents "gave substantial assistance or encouragement" to the attorney defendants, and contradict appellants' acknowledgment that the attorney defendants acted as independent counsel for appellants. As such, the trial court did not err in sustaining the demurrer to these causes of action against respondents.

Finally, appellants contend that the trial court erred in sustaining the demurrer as to the fourteenth cause of action for declaratory relief. They argue that the FAC sufficiently alleged facts showing an actual controversy between the parties. We disagree. The FAC sought a declaration that the settlement agreement was void because the trial court lacked personal jurisdiction over respondents as non-parties. We rejected that claim in *Balakhane II*. Accordingly, there remains no "actual controversy relating to the legal rights and duties of the respective parties" sufficient to maintain an action for declaratory relief. (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 605.)

## II.     Motion for Judgment on the Pleadings

"'A motion for judgment on the pleadings, like a general demurrer, challenges the sufficiency of the plaintiff's cause of action and raises the legal issue, regardless of the existence of triable issues of fact, of whether the complaint states a cause of action.' The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer. . . . "We review the complaint de novo to determine whether [it] alleges

26

facts sufficient to state a cause of action under any legal theory.""" (*Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1213-1214.)

Appellants make a single claim of error as to Northfield's motion for judgment on the pleadings. They argue that the trial court erred by failing to consider appellants' "demonstrated ability to cure the pleading defect and allege that the release of Northfield was void" under section 583.210. We again note that appellants did not make this argument before the trial court. Obviously, the court could not fail to consider an argument never raised. Moreover, we have rejected appellants' argument regarding section 583.210. The challenge to the motion for judgment on the pleadings thus fails for the same reasons.

## III.   Anti-SLAPP Motion[12]

Appellants contend that respondents failed to make the required step one showing that the challenged conduct is protected under the anti-SLAPP statute. They assert that their aiding and abetting claims against respondents arise out of the purported legal malpractice by the attorney defendants, rather than from protected litigation activity. They argue that respondents cannot raise the litigation privilege in step two for the same reason. We disagree with appellants and affirm the trial court's order granting the motion to strike.[13]

---

[12] Although we have affirmed the order dismissing all claims against Nationwide, we reach the merits of appellants' challenge to the anti-SLAPP motion because Nationwide was awarded fees and costs as the prevailing party under section 425.16.

[13] Appellants do not challenge the order awarding fees and costs to Nationwide as prevailing parties under section 425.16,

27

**A.** *Section 425.16 and Standard of Review*

"A cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster Energy*), citing § 425.16, subd. (b)(1).) Thus, "[a]nti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) "If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Ibid.*)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.] In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park, supra*, 2 Cal.5th at p. 1067.)

**B.** *Step One: Protected Activity*

---

except to say that if we reverse the order granting the motion to strike, we should reverse the fee award as well.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at p. 1062.) "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063.) Thus, "a claim may be struck only if the speech or petitioning activity itself is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id.* at p. 1060.)

A defendant meets its step one burden "'by demonstrating that the act underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e)'." (*Hunter v. CBS Broadcasting, Inc.* (2013) 221 Cal.App.4th 1510, 1519.) Claims that arise out of the filing of a lawsuit arise from protected activity for purposes of the anti-SLAPP statute. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1024.) "Settlement negotiations while a suit is pending are likewise protected; they involve communications in connection with a matter pending before or under consideration by an official body, and so fall within the scope of section 425.16, subdivision (e)(2)." (*Ibid.*) "Recognized petitioning activities thus include not only the conduct of litigation but also acts and communications reasonably incident to litigation." (*Id.* at p. 1025.)

Appellants contend their claims arise out of the malpractice conduct alleged against the attorney defendants, such as forcing appellants to accept the settlement over their "vehement objection," "pursuing strategies contrary to their client's [appellants'] interests," and fraudulently failing to inform appellants of significant developments relating to the

29

representation, including that "Northfield was now a participant in the underlying lawsuit" by paying for a portion of the settlement. They argue that this conduct is not protected under section 425.16, and that any litigation-related activity is "merely the setting in which the claims arose." To this end, appellants cite *Sprengel v. Zbylut* (2015) 241 Cal.App.4th 140 (*Sprengel*), for the proposition that "numerous cases have held that 'actions based on an attorney's breach of professional and ethical duties owed to a client' are generally not subject to section 425.16 'even though protected litigation activity features prominently in the factual background.'" (*Id*. at p. 151, quoting *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490.)

Appellants' reliance on *Sprengel* is unpersuasive. In *Sprengel, supra*, 241 Cal.App.4th at p. 155, the court denied an anti-SLAPP motion brought by defendant attorneys, finding that the activities giving rise to the defendants' asserted liability were not their litigation activities, but included the defendants' acts of "undertaking a representation in which they had an irreconcilable conflict of interest; failing to competently represent Sprengel's interests in the underlying litigation; and failing to obtain Sprengel's permission before using her funds to pay for the litigation." Appellants ignore the distinction between their claims against their former counsel and the claims against respondents at issue here. We look to the alleged conduct by respondents that gives rise to the claims of aiding and abetting malpractice in order to assess whether the activity is protected under the anti-SLAPP statute. That conduct includes purported discussions between respondents and the attorney defendants during the settlement negotiations, after which the attorney defendants improperly pressured appellants to accept the

30

settlement; it also includes the allegation that respondents failed to disclose certain information to appellants during the settlement discussions. This conduct falls within the ambit of litigation and settlement-related activities that are protected by section 425.16, regardless of whether those activities were improper. (See *Bonni, supra*, 11 Cal.5th at p. 1025 [finding that claim arose from settlement negotiations and that "[a]lthough Bonni alleges fraud in the course of those negotiations, that allegation does not remove them from the definition of protected activity"].) As such, we conclude that respondents met their burden to establish that the second, fourth, and sixth causes of action arose out of activity protected under the anti-SLAPP statute.

C.    *Step Two: Likelihood of Success*

Once a defendant satisfies the first step of the anti-SLAPP analysis, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.) "The showing must be made through 'competent and admissible evidence.'" (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26.) A plaintiff "'cannot simply rely on the allegations in the complaint.'" (*Alpha & Omega Development, LP v. Whillock Contracting, Inc.* (2011) 200 Cal.App.4th 656, 664.)

Respondents contend, and the trial court found, that appellants could not meet their burden on this step because the

statements at issue were protected by the litigation privilege.  We agree.

The litigation privilege is codified in Civil Code section 47, subdivision (b) (section 47(b)).  As relevant here, section 47(b)(2) defines a "privileged publication or broadcast" as one made in "any judicial proceeding."  "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*).)  The privilege applies "'to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved.'"  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 (*Rusheen*), quoting *Silberg, supra*, 50 Cal.3d at p. 212.)  The privilege is not limited to statements made during trial or other proceedings, "but may extend to steps taken prior thereto, or afterwards."  (*Rusheen, supra*, 37 Cal.4th at p. 1057.)

The privilege "is 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution.'"  (*Flatley, supra*, 39 Cal.4th at p. 322.)  "Any doubt as to whether the privilege applies is resolved in favor of applying it."  (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529.)  While the protections under the litigation privilege and the anti-SLAPP statute are not identical (see *Flatley, supra*, 39 Cal.4th at pp. 324-325), cases construing the scope of the litigation privilege have read the reasonable relevancy requirement of section 47 as analogous to the "in connection with" standard of section 425.16,

subdivision (e)(2). (See, e.g., *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266). The litigation privilege is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (*Flatley, supra*, 39 Cal.4th at p. 323.)

Appellants again focus on their contention that malpractice claims are not barred by the litigation privilege, ignoring the distinction between those claims and the ones at issue here, for aiding and abetting malpractice. As discussed above, the communications that allegedly constituted aiding and abetting by respondents occurred during litigation and settlement negotiations, and are thus protected by the litigation privilege.

Appellants also acknowledge Nationwide's argument that they could not show a probability of success on the merits because their claims had been released. They do not challenge this assertion directly, instead contending the court need not reach this issue because Nationwide could not prevail on the first step. But we have concluded that Nationwide met its burden on the first step, and further agreed with Nationwide regarding the valid release of the claims alleged in the FAC. Accordingly, we find no error in the trial court's conclusion that appellants failed to meet their burden on the second step of the anti-SLAPP motion to show a probability of prevailing on their claims.

## DISPOSITION

The judgment is affirmed. We also affirm the order granting Nationwide's motion to strike. The appeal by California Capital Venture, Inc. is dismissed. Respondents are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

CURREY, ACTING, P.J.                    ZUKIN, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.